The **PINAL CREEK GROUP,** consisting of Cyprus Miami Mining Corporation, Inspiration Consolidated Copper Company, and Magma Copper Company, Plaintiffs,

v.

**NEWMONT MINING CORPORATION, et al., Defendants.**

**CIV–91–1764–PHX–ROS.**

United States District Court, D. Arizona.

March 27, 1996.

Charles J. Muchmore, Nicholas J. Wallwork, Muchmore & Wallwork PC, Phoenix, AZ, for Pinal Creek Group.

Gerald S. Maltz, Miller Pitt & McAnally PC, Tucson, AZ, Shane Ray Swindle, Karl M. Tilleman, Dalton Gotto Samson & Kilgard PLC, Phoenix, AZ, Scott W. Rodgers, Osborn Maledon, PA, Phoenix, AZ, for Newmont Mining Corporation.

Michael P. Berman, John Dunning Titus, Lowe & Berman PA, Phoenix, AZ, for Occidental Petroleum Corp. and Canadianoxy Offshore Production Co.

Steven B. Weatherspoon, Chandler Tullar Udall & Redhair, Tucson, AZ, Michael John Gallagher, Davis Graham & Stubbs, Denver, CO, Sherry Marie Purdy, Atlantic Richfield Co., Denver, CO, for Atlantic Richfield Company.

John Marquette Rochefort, Patrick Ward Dennis, Michael David Young, Tiffany R. Hedgpeth, McClintock Weston Benshoof Rochefort Rubalcava & MacCuish, Los Angeles, CA, for Phelps Dodge Corp.

## ORDER

SILVER, District Judge.

The Pinal Greek Group ("Plaintiffs") filed this action to recover expenditures involved in remediating groundwater contamination in the Pinal Creek drainage basin in Gila County, Arizona. Plaintiffs' Second Amended Complaint ("Complaint") contains three counts: Count I—cost recovery and declaratory relief pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607; Count II—cost recovery and declaratory relief under the Arizona Environmental Quality Act, A.R.S. § 49–285; and Count III—contribution pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f).

The following motions are pending before the Court: Defendant ARCO's Motion to Dismiss Plaintiffs' Cost Recovery Claims,[1] Defendants Newmont Mining Corporation, Occidental Petroleum Corporation, and CanadianOxy Offshore Production Company's Motion for Judgment on the Pleadings as to Plaintiffs' Cost Recovery Claims, and Defendant ARCO's Motion to Dismiss Inspiration's Contribution Claim. Having considered the parties' briefs and oral arguments, the Court denies these motions.

### Factual Background

The Pinal Creek drainage basin is located near the towns of Globe and Miami, Arizona. Mining and mineral processing activities have occurred in the Globe–Miami area since approximately 1883. These activities resulted in the production of hazardous substances, which have contaminated the groundwater in the shallow aquifer underlying Pinal Creek. Left unabated, the contaminated groundwater could reach the perennially flowing segment of Pinal Creek, and then the Salt River, and from there Roosevelt Lake, a major water source for residents of Maricopa County.

On May 8, 1989, the Director of the Arizona Department of Environmental Quality ("ADEQ") executed a Decision Record authorizing the use of monies from the Arizona Water Quality Assurance Revolving Fund "for purposes related to the investigation and remediation of the Pinal Creek site," in accordance with the Arizona Environmental Quality Act, A.R.S. §§ 49–281 to 49–287. The Decision Record states that this action was taken in response to "contamination of groundwater with acid mine drainage, containing acids and heavy metals, in the Pinal Creek Area."

On November 20, 1989, Plaintiff Cyprus Miami Mining Company ("Cyprus") provided ADEQ with a proposed interim Remedial Action Plan ("RAP") describing preliminary measures for responding to the contamination. ADEQ approved the RAP in May 1990.

On May 17, 1990, Cyprus entered into a "Group Agreement" with Plaintiffs Magma Copper Company and Inspiration Consolidated Copper Company, pursuant to which the "Pinal Creek Group" was formed and the individual group members agreed to share remediation costs. With the approval and under the oversight of ADEQ, Plaintiffs began implementing the RAP, incurring costs relating to sampling and analytical tests and services, time of Group personnel, costs of expert consultants, legal representation, identification of potentially responsible parties, investigation, and reimbursement of ADEQ for oversight costs. Plaintiffs have spent more than $1 million.[2] They will continue to incur response costs, possibly running into the millions of dollars, arising out of the cleanup.

ADEQ has asked Defendants—who, like Plaintiffs, presently or in the past have

---

1. All other Defendants have joined ARCO's cost recovery motion.

2. Plaintiffs allege that these costs were incurred in a manner consistent with the National Contingency Plan established by the United States Environmental Protection Agency ("EPA") pursuant to 42 U.S.C. § 9607(a)(4)(B), and consistent with the rules and procedures adopted by ADEQ under A.R.S. § 49–282(E).

owned or operated mining facilities in the Pinal Creek area—to participate in the cleanup and reimburse ADEQ for investigative and oversight costs. To date, Defendants have refused to participate in the cleanup or reimburse the state..

Plaintiffs filed this action on November 5, 1991. Defendants asserted contribution counterclaims pursuant to 42 U.S.C. 9613(f).

### Governing Legal Principles

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, all factual allegations in the complaint are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir.1994). A complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) only if the plaintiff can prove no set of facts which would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Similarly, in considering a motion for judgment on the pleadings, all factual allegations in the nonmovant's pleadings are assumed to be true and all contravening assumptions in the movant's pleadings are taken to be false. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir.1989). Judgment on the pleadings is proper where the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Id.*

### Standing to Assert Cost Recovery Claims

Defendants' cost recovery motions turn on the resolution of a hotly-debated legal question: May Plaintiffs, who are potentially responsible for groundwater contamination in the Pinal Creek basin, proceed under CERCLA's cost recovery provision, Section 107 (codified as 42 U.S.C. § 9607), or are they limited to an action for contribution pursuant to Section 113(f) (codified as 42 U.S.C. § 9613(f))?[3]

The resolution of this issue will have a significant impact on this litigation. Under Section 107, liability is joint and several, the range of possible defenses is sharply limited, and the statute of limitations is six years. In contrast, under Section 113(f), liability is several only, an array of equitable defenses are permitted, and the limitations period is three years.

To resolve the parties' dispute, the Court will first provide an overview of CERCLA's text and history. The Court will then summarize the parties' contentions and evaluate them according to CERCLA's text, policies and other important factors.

### I. CERCLA Overview

CERCLA Section 107(a)(4)(A) provides a cause of action for the government and Indian tribes to recover costs incurred in responding to environmental contamination. Section 107(a)(4)(B) allows the recovery of "any other necessary costs of response incurred by *any other person* consistent with the national contingency plan ..." (Emphasis added.) The latter provision creates an implied cause of action for private parties to seek recovery of cleanup costs. *Key Tronic Corp. v. United States*, 511 U.S. 809, ——, 114 S.Ct. 1960, 1966, 128 L.Ed.2d 797 (1994).

A cost recovery action under either provision may be brought against any potentially responsible party ("PRP"), defined as a party falling into one of the following classes: (1) the owner and operator of the facility; (2) any person who owned or operated the facility at the time of disposal of any hazardous substance; (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment of hazardous substances owned or possessed by that person; and (4) any person who accepted any hazardous sub-

---

**3.** This issue is the subject of a pending appeal in the Ninth Circuit from a case in the Central District of California. *National American Railroad Passenger Corp. v. BPJ Int'l, et al.*, U.S. Court of Appeals Docket No. 95–56734, Lower Court Docket No. CV–92–2818–WMB. The Ninth Circuit scheduling order indicates that briefing will not be complete until May 1996. Presumably, a decision will not be rendered for several months thereafter. Plaintiffs and Defendants have urged the Court to resolve the issue now rather than await a decision from the Ninth Circuit. The parties argued, in part, that the Ninth Circuit's decision may not be controlling, because the facts of the instant dispute vary from those before the appellate court. Accordingly, the Court agreed to hear argument and rule on the motions.

stances for the transport to disposal or treatment sites selected by that person. 42 U.S.C. § 9607(a)(1)–(4).

Cost recovery actions are subject only to three enumerated defenses: (1) an act of God; (2) an act of war; (3) an act or omission of a third party. 42 U.S.C. § 9607(b)(1)–(4). *See Velsicol Chem. Corp. v. Enenco, Inc.,* 9 F.3d 524, 530 (6th Cir.1993) (equitable defenses do not apply to Section 107 actions because Congress explicitly limited available defenses to those provided in Section 107(b)).

Section 107 defendants are strictly liable—that is, liability may be imposed without proof of causation—if there was a release or threat of release of a hazardous substance at a facility and a person incurred necessary response costs consistent with the National Contingency Plan. 42 U.S.C. § 9607(a); 42 U.S.C. § 9601(32); *United States v. Monsanto Co.,* 858 F.2d 160, 167 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989).

The scope of PRP liability is not defined by the text of Section 107. The legislative history, however, indicates that the federal courts should establish a uniform rule of liability in accordance with "traditional and evolving principles of law." *United States v. Chem–Dyne Corp.,* 572 F.Supp. 802, 806–807 (S.D.Ohio 1983) (*quoting* statement of Rep. Florio, CERCLA's sponsor in the United States House of Representatives) (reprinted in 126 Cong.Rec. H11787 (Nov. 24, 1980)). With near unanimity, courts have found that section 107 liability is joint and several unless the defendant can demonstrate that the harm is divisible. *E.g., United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 268–69 (3d Cir.1992).

To alleviate the potentially unfair burden that joint and several liability may cause, courts in CERCLA's early years created an implied cause of action for contribution. *E.g., United States v. South Carolina Recycling and Disposal, Inc.,* 653 F.Supp. 984, 995 n. 8 (D.S.C.1984). This allowed defendants to sue other parties to obtain an equitable allocation of the costs of an environmental cleanup.

Congress codified the right of contribution in the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 (1986) (codified in scattered sections of 42 U.S.C.). The contribution provision, CERCLA Section 113(f), provides in pertinent part:

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action ... under section 9607(a) of this title.... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under ... section 9607 of this title.

42 U.S.C. § 9613(f). The House Energy and Commerce Committee report states: "This section clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." H.R.Rep. No. 253, 99th Cong., 2d Sess., pt. 1, at 79, *reprinted in* 1986 U.S.C.C.A.N. 2835, 2861 (*citing United States v. South Carolina Recycling and Disposal, Inc., supra* ).

Instead of clarifying and confirming the right of contribution, however, these amendments "ignited a firestorm" of litigation and judicial controversy. Ann Alexander, *Standing Under Superfund §§ 107 and 113: Avoiding the Error of the Blind Man and the Elephant,* Toxics L.Rptr. (BNA) 155 (July 12, 1995) (hereinafter *Standing Under Superfund* ). The chief source of this controversy was the fact that the amendments added several new provisions to CERCLA—including Section 113—without specifically clarifying their relationship to Section 107. *Id.* One of the most frequently litigated issues arising from this controversy concerns the problem of PRP standing under section 107.[4]

---

**4.** Interpretational problems involving various

provisions in CERCLA confronted the federal

## II. The Parties' Contentions

Defendants argue that Plaintiffs lack standing to bring a cost recovery action pursuant to Section 107(a)(4)(B). They contend that the cost recovery action, with its judicially-fashioned provision for joint and several liability, was intended for use only by governmental and "innocent" private parties. Because Plaintiffs are potentially responsible parties, they should not be allowed to impose joint liability upon other PRPs. Instead, their action should be recognized for what it is—a "quintessential" claim for contribution arising under CERCLA Section 113(f).

Plaintiffs argue that the plain language of Section 107 authorizes "any ... person," not "any innocent person," to bring a cost recovery action, so long as that person has incurred cleanup costs. They contend that this position is consistent with the language and policies of CERCLA.

## III. Discussion

■ An examination of the statutory language, policy, and case law demonstrates that Plaintiffs have standing under Section 107.

### A. Statutory Text

■ The Court begins its task of interpreting CERCLA Section 107(a)(4)(B) by reviewing two critical cannons of statutory interpretation. First, in interpreting a statutory provision, a court must look to the statute's plain language. *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1916). Where the language of the statute is plain and unambiguous on its face, "the sole function of the courts is to enforce it according to its terms." *Id.* *See also United States v. Behnezhad*, 907 F.2d 896, 898 (9th Cir.1990).

■ Second, when a court is construing a remedial statute, it must construe the statutory language broadly in order to give effect to the statute's remedial purposes. *See, e.g., Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 803 (9th Cir.1989) (courts are obligated to construe CERCLA provisions liberally because it is a remedial statute designed to protect and preserve public health and the environment).

The plain language of CERCLA's private party standing provision, 42 U.S.C. § 9607(a)(4)(B), clearly and unequivocally grants standing to "any ... person" who has incurred necessary response costs consistent with the National Contingency Plan. The text does not read "any innocent person."

Likewise, the provision conferring standing upon governmental and tribal entities creates no distinction between innocent and non-innocent plaintiffs. *See* 42 U.S.C. § 9607(a)(4)(A). Given the parallel language of these provisions, it would be anomalous to suggest that Congress intended to limit private party standing to "innocent" plaintiffs, while permitting standing for innocent and non-innocent governmental plaintiffs.[5]

Similarly, the enumerated defenses set forth in Section 107(b) make no distinction between innocent and non-innocent plaintiffs, and courts have consistently held that the narrow language of Section 107(b) precludes defenses based on a plaintiff's status as a potentially responsible party. *See General Electric Co. v. Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415, 1418 (8th Cir.1990)

courts even before the enactment of the SARA amendments. *E.g., United States v. Mottolo*, 605 F.Supp. 898, 902 (D.N.H.1985) (recognizing that "CERCLA has acquired a well-deserved notoriety for vaguely drafted provisions and an indefinite, if not contradictory, legislative history"). These problems stem, in part, from the fact that the enacted version of CERCLA was the result of several last-minute legislative compromises. *See Walls v. Waste Resource Corp.*, 761 F.2d 311, 318 (6th Cir.1985).

5. Defendants argue that governmental entities are treated differently, because, as "enforcers" of the law, they are entitled to bring cost recovery actions regardless of culpability. Defendants cite no case authority for this proposition. The Court, however, has located a case that explicitly rejects this argument. *See Town of Wallkill v. Tesa Tape Inc.*, 891 F.Supp. 955, 960 (S.D.N.Y. 1995) (even if a potentially responsible plaintiff was not a governmental entity, it still would be able to seek joint and several liability for response costs under section 107). Like the Southern District of New York, this Court refuses to rewrite section 107 by carving out a distinction between governmental and private party plaintiffs.

("CERCLA does not provide for an 'unclean hands' defense"), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991); *Hassayampa v. State of Arizona*, No. CIV 89–0188 PHX RCB, 1989 WL 248273, at *10–11, 1989 U.S.Dist. LEXIS 17411, at *27–29 (D.Ariz. Dec. 27, 1989) (rejecting unclean hands defense).

In light of the explicit language of Section 107, this Court finds that Section 107 confers standing upon any party who has incurred response costs—regardless of culpability. *See Bethlehem Iron Works, Inc. v. Lewis Industries, Inc.*, 891 F.Supp. 221, 225 (E.D.Pa.1995) (plain language of Section 107 indicates that Congress intended cost recovery standing to sweep broadly). The plain language of the statute draws no distinction between innocent and non-innocent plaintiffs, or between public and private plaintiffs; the only distinction drawn is that between parties who have incurred response costs and those who have not.

Nothing in the SARA amendments explicitly qualifies the plain language of Section 107. Section 113(f)(1) provides a right of contribution for private parties. However, this section does not provide that contribution is the exclusive remedy for potentially liable parties. *Id.* at 225.

This conclusion is supported by a comparison of the statutes of limitations for cost recovery and contribution actions added by the SARA amendments. The three-year statute of limitations for contribution claims begins to run on the date of judgment, administrative order, or entry of a judicially-approved settlement concerning costs or damages. 42 U.S.C. § 9613(g)(3). In contrast, the six-year statute of limitations for a claim to recover remediation costs begins to run after initiation of physical on-site construction. 42 U.S.C. § 9613(g)(2). If parties who voluntarily clean up are limited to suing under Section 113(f), it would appear that no statute of limitations applies to them. *Bethlehem Iron Works*, 891 F.Supp at 225. This statutory anomaly suggests that the SARA amendments do not bar PRPs from pursing cost recovery claims.[6]

Furthermore, substantial weight should be given to the fact that Congress expressly intended Section 113 to confirm preexisting case law. That case law generally interpreted Section 107 broadly to afford a cause of action to liable and non-liable parties alike.[7]

Defendants argue that allowing Plaintiffs Section 107 standing would frustrate contribution protection, a provision added by the SARA amendments to protect persons who

---

**6.** Defendants argue that, under Plaintiffs' interpretation of the statute, the three year statute of limitations for contribution actions would be swallowed by the longer limitations period for cost recovery actions. Several courts have endorsed this argument. *E.g., United Technologies Corp. v. Browning–Ferris Indus., Inc.*, 33 F.3d 96, 101 (1st Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995).

This argument was convincingly answered in *United States v. J.M. Taylor*, 909 F.Supp. 355, 365 (M.D.N.C.1995), where the court stated:
Section 113(g)(3) clearly contemplates that a party bringing a contribution action will have been subjected to a judgment or a court approved settlement.... However, a PRP which conducts an environmental cleanup will not necessarily have suffered a judgment or court approved settlement and, thus, cannot bring a contribution action—and this includes one subjected to a Section 106 administrative order. A party which completes a removal or remedial action as referenced in Section 113(g)(2) arguably needs the extra time of the six-year period because it is busy doing the cleanup. On the other hand, a party which has incurred fixed liability would arguably need only the shorter three-year period from the time such liability was imposed.
The *Taylor* court correctly perceived that an action for contribution must be preceded by a judgment, settlement or administrative order which fixes a party's total liability. This statutory prerequisite means that the three-year statute of limitations for contribution actions will not necessarily be consumed by allowing non-innocent parties to sue under section 107.

**7.** *See Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 889–90 (9th Cir.1986) (allowing potentially responsible party to bring cost recovery suit under section 107). *Accord, NL Indus. v. Kaplan*, 792 F.2d 896, 897–98 (9th Cir.1986); *United States v. New Castle County*, 642 F.Supp. 1258, 1264 (D.Del.1986); *Pinole Point Properties v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 290 (N.D.Cal.1984); *United States v. Ward*, No. 83–63–CIV–5, 1984 WL 15710, at *1–2 (E.D.N.C. May 14, 1984); *Bulk Distribution Ctrs., Inc. v. Monsanto Co.*, 589 F.Supp. 1437, 1443 (S.D.Fla. 1984); *Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1428–29 (S.D.Ohio 1984); *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1143 (E.D.Pa.1982).

have settled with the government from contribution claims regarding matters addressed in the settlement. 42 U.S.C. § 9613(f)(2). Defendants contend that Plaintiffs might abuse this provision by settling with the government for the entire cost of the cleanup, thereby insulating themselves from Defendants' contribution counterclaims.

Early settlement, however, does not constitute an abuse of the statute. Instead, prompt settlement is purposefully encouraged by CERCLA's regulatory scheme, which subjects non-settling parties to the risk of disproportionate liability. *See Atlantic Richfield Co. v. American Airlines, Inc.*, 836 F.Supp. 763, 775 (N.D.Okla.1993) (risk of disproportionate liability created by contribution protection creates strong incentives for early or universal settlement). *See also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 89 (1st Cir.1990) ("rewarding PRPs who settle sooner rather than later is completely consonant with CERCLA's makeup"); *Arizona ex rel. Woods v. Nucor Corp.*, 825 F.Supp. 1452, 1463 (D.Ariz.1992) (risk of excess liability is integral part of CERCLA), *aff'd, Arizona v. Components Inc.*, 66 F.3d 213 (9th Cir.1995).

Moreover, any potential for abuse emanating from a settlement between Plaintiffs and the government is substantially mitigated by the fact that any settlement must be approved by the Court. *City of New York v. Exxon*, 697 F.Supp. 677, 692 (S.D.N.Y.1988) (court must review settlements for fairness, reasonableness, and consistency with the Constitution and the mandate of Congress).

Based on the foregoing analysis, the Court refuses to engraft the word "innocent" onto the phrase "any ... person" set forth in Section 107(a)(4)(B). This decision is supported by an analysis of CERCLA policy and case law, to which the Court now turns.

### B. CERCLA Policy

Courts have characterized CERCLA's goals as two-fold: encouraging the prompt and voluntary cleanup of hazardous wastes; and imposing the costs of cleanup on responsible parties. *E.g., Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 891 (9th Cir. 1986); *Bethlehem Iron Works*, 891 F.Supp. at 225; *United States v. SCA Services of Indiana, Inc.*, 849 F.Supp. 1264, 1284 (N.D.Ind.1994).[8]

Under Plaintiffs' reading of Section 107, potentially responsible plaintiffs who initiate an environmental cleanup may sue for cost recovery and initially shift the cost of the cleanup to other PRPs. *See United States v. Kramer*, 757 F.Supp. 397, 416 (D.N.J.1991) (under Section 107 a PRP may "go in, clean up the mess, pay the bill, then collect all its costs not inconsistent with the NCP from other responsible parties"). Where plaintiffs are also liable parties, however, defendants may assert counterclaims pursuant to Section 113(f), ensuring that plaintiffs do not escape from paying an equitable share of the cleanup cost. *Id.* at 416 ("Any PRP is entitled under Section 113 to bring a contribution action against other PRPs—including the PRP who previously cleaned up the mess and was paid for its trouble through a Section 107 proceeding—to apportion costs equitably among all the PRPs.").

This two-step framework satisfies both of CERCLA's goals: it provides an array of incentives for private parties to initiate prompt environmental cleanups; and it ensures that cleanup costs will be equitably allocated among responsible parties.

Specifically, allowing PRPs to proceed under Section 107 creates several incentives for early cleanup and settlement. These incentives include: (1) shifting the difficult burden of proof concerning the allocation of cleanup costs from plaintiffs to defendants; (2) relieving plaintiffs of the risk of being held liable for "orphan shares"—cleanup costs that would otherwise be charged to insolvent or absent parties; (3) minimizing plaintiffs' transaction costs involved in tracking down and suing every PRP; (4) limiting the range of available defenses to those enumerated in Section 107(b); and (5) giving parties who initiate cleanups the benefit of a longer stat-

---

**8.** *See also Velsicol Chem. Corp. v. Enenco, Inc.*, 9 F.3d 524, 529 (6th Cir.1993) (noting that "the legislative history underlying SARA echoes the recurring theme of facilitating prompt cleanups with greater force than that underlying CERCLA's original enactment in 1980.").

ute of limitations. *See United States v. Atlas Minerals & Chems., Inc.,* No. 91–5118, 1995 WL 510304, at *99, 1995 U.S.Dist. LEXIS 13097, at *222 (E.D.Pa. Aug. 22, 1995); *Allied Corp. v. Acme Solvents Reclaiming, Inc.,* 691 F.Supp. 1100, 1118 (N.D.Ill.1988), *overruled sub silentio by Akzo Coatings v. Aigner Corp.,* 30 F.3d 761 (7th Cir.1994). In combination, these factors provide private parties with strong incentives to initiate voluntary cleanups of hazardous waste sites.

These incentives work in tandem with disincentives targeted at PRPs who resist participating in cleanups or settlements. Illustratively, in *Atlantic Richfield Co.,* 836 F.Supp. at 775 ("*ARCO* "), the court permitted ARCO, the plaintiff in a cost recovery action, to impose joint and several liability upon certain defendants in order to encourage them to settle with ARCO. The court noted that "[s]ince non-settling parties remain jointly and severally liable, they pay the balance owed to plaintiff regardless of whether any settling defendant has paid more or less than its proportionate share. The practical effect in a case where the total cost of the remediation has not been finally fixed is to increase the risk the longer a defendant stays in the suit, creating a strong incentive for earlier and/or universal settlement." *Id.*[9]

If Plaintiffs are not allowed to seek joint and several liability, the foregoing incentive scheme would be turned on its head. In a contribution action, Plaintiffs would bear the burden of proving that they had assumed more than their fair share of cleanup costs in remediating the Pinal Creek site. To recover monies expended in excess of their fair share, they might have to track down and sue every potentially responsible party, incurring considerable transaction costs. They would also risk being stuck with cleanup cost shares attributable to absent or insolvent parties. Moreover, Plaintiffs would not be able to wield the threat of disproportionate liability against Defendants to encourage early settlement.

As a result, Plaintiffs would face several barriers in attempting to recoup their clean-

up costs. This result is at war with CERCLA policy, because Plaintiffs would be less likely to voluntarily perform a lengthy and costly cleanup if the prospect of recovering their costs is remote and expensive. *Standing Under Superfund, supra.* Plaintiffs might even choose to contest their liability rather than initiate a cleanup. *Id.*

However, by mitigating the risks involved in private party remediation of hazardous waste sites, affording PRPs Section 107 standing furthers the fundamental CERCLA goal of promoting expeditious voluntary cleanups. *See* Mem. of Amicus Curiae City of Phoenix Regarding Cost Recovery under CERLA at 4 ("Private parties who come forward, enter settlements, clean up sites, and seek to recover their costs from PRPs that were unwilling to share responsibility must receive some benefit for their labors and costs. By no means should they suffer greater exposure and higher risk than PRPs that do nothing and wait to be sued.").

In their Amici Curiae briefs, the City of Phoenix and the State of Arizona underscore another important policy consideration: if PRPs are not allowed to sue under Section 107, then the viability of the CERLCA program itself will be jeopardized. (Mem. of Amicus Curiae City of Phoenix Regarding Cost Recovery under CERCLA at 2.) The Amici Curiae point out that there are currently fifty-six federal and state Superfund sites in Arizona. In light of the enormous financial burden involved in cleaning up these sites, they argue:

> Absent PRP contribution, the federal Superfund would be wholly insufficient to pay for remediation of NPL [National Priority List] sites, much less other impacted areas. The situation is more dire in Arizona, where the limited WQARF resources frequently preclude ADEQ from even suing PRPs to initiate cleanup, much less doing the work itself. . . . In short, unless liable parties continue to undertake prompt remediation themselves, the system will grind to a halt.

---

**9.** Defendants have argued that the possibility of settlement in this case will significantly increase if the Court dismisses Plaintiffs' cost recovery claims. Given the adversarial and zealous litigation stance of the parties up to this point, the Court finds this argument unconvincing.

*Id.* These statements indicate that a narrow construction of Section 107 standing would eviscerate the government's ability to carry out the statutory purposes of CERCLA. While this argument is not necessary to the Court's holding, it lends strong support to Plaintiffs' position.

Finally, the absence of countervailing policy concerns supports Plaintiffs' in this case. Where a plaintiff brings a Section 107 claim merely to circumvent contribution protection granted by the government to another party pursuant to Section 113(f)(2), or to avoid the shorter statute of limitations for contribution actions, CERCLA policy militates against allowing Section 107 standing. *See Bethlehem Iron Works,* 891 F.Supp. at 225. However, Plaintiffs are not seeking to circumvent contribution protection or to avoid the shorter limitations period. Instead, they are attempting to shift many of the legal and financial risks associated with their cleanup to Defendants, who have so far refused to assist in the cleanup. These circumstances support allowing Plaintiffs to utilize Section 107 here.

## C. Defendants' Common Law Argument

Instead of analyzing the parties' dispute from the standpoint of CERCLA policy, Defendants argue that the dispute should be analyzed with reference to the ordinary legal meaning of the term "contribution." Defendants cite Section 886A(1) of the Restatement (Second) of Torts (1979), which provides that "[w]hen two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them." Defendants argue that Plaintiffs' lawsuit is in substance an action for contribution, as that word is defined in the Restatement.[10]

10. Several courts have rejected PRP standing under section 107 on the basis of this line of reasoning. *E.g., City of Fresno v. NL Indus., Inc.,* No. CV–F 93–5091 REC/DLB, 1995 WL 641983, \*2–5, 1995 U.S.Dist. LEXIS 15534, \*15–19 (E.D.Cal. July 13, 1995) (collecting cases).

11. The Restatement (Second) of Torts (1979) defines indemnity between tortfeasors in section 886B(1) as follows:

Implicit in Defendants' reasoning is the assumption that Plaintiffs and Defendants stand on an equal legal footing because, as PRPs, they could be co-defendants in a cost recovery action brought by a third party.

This assumption ignores the fact that CERCLA Section 107 differentiates between responding and non-responding parties and confers significant legal advantages upon litigants in the former category. Under CERCLA Section 107(a)(4)(A)–(B), any person who incurs response costs may sue for cost recovery, simply because that person is acting to address the threat to human health and the environment posed by hazardous wastes. Here, Plaintiffs are currently involved in cleaning up the Pinal Creek basin. Defendants are doing nothing. Consequently, Plaintiffs and Defendants do not stand in an equal legal relationship with each other under the terms of the statute.

This analysis is consistent with traditional principles of common law. The principle of indemnity, which significantly pre-dates that of contribution, allowed a tortfeasor to recover from another the entire cost of a joint liability.[11] Traditionally, whether indemnity or contribution applied in an action among joint tortfeasors usually turned upon an assessment of the blameworthiness of the parties. According to comment a of Restatement (Second) of Torts (1979) § 886B:

> The explanation apparently lies in the utilization of the Latin maxim, *In pari delicto potior est conditio defendentis* (In equal guilt, the position of the defendant is the stronger). A suit for contribution is brought for the recovery of a proportionate part of the sum paid by the plaintiff, on the ground that the parties were both guilty of negligence and should share the cost; the parties being equally guilty, the maxim applies. A suit for indemnity is brought to

> If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of liability.

recover the total amount of payment by the plaintiff, on the ground that the plaintiff's conduct was not as blameworthy as the defendant's; the parties not being *in pari delicto*, the maxim does not apply. The distinction drawn in CERCLA Section 107 between responding and non-responding parties recognizes that responding parties are less blameworthy than other PRPs because they have began to assist in a cleanup. Under traditional common law analysis, Plaintiffs, as responding parties, are not *in pari delicto* with Defendants, and therefore are entitled to recover (at least in the first instance) their entire cleanup costs.

This reasoning is supported by pre-SARA case law, which Congress sought to "clarify and confirm" by enacting Section 113. Early CERCLA case law generally recognized the right of culpable private parties to obtain *indemnification* and/or contribution from recalcitrant parties for remediation costs. *See United States v. Ward*, No. 83–63–CIV–5, 1984 WL 15710, at *1–2 (E.D.N.C. May 14, 1984) (recognizing PRP's cost recovery action as one for indemnity or contribution); *Bulk Distribution Ctrs., Inc. v. Monsanto Co.*, 589 F.Supp. 1437, 1443 (S.D.Fla.1984) (same).

Moreover, pre-SARA case law recognized that a plaintiff's PRP status did not obliterate the statutory distinction between responding and non-responding parties. In *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135, 1143 (E.D.Pa.1982), the City of Philadelphia, a PRP and an owner of a hazardous waste disposal site, brought a section 107 action against various defendants who had dumped waste at the site. Defendants filed a motion for judgment on the pleadings, arguing that the "any other person" language of Section 107(a)(4)(B) referred to persons other than those designated as potentially responsible parties under the statute. *Id.* at 1142.

The court rejected this contention. It noted that CERCLA was designed to encourage prompt cleanups, and that Section 107 "is an integral part of the statute's method of achieving this goal for it gives a private party the right to recover its response costs from responsible third parties which it may choose to pursue rather than claiming against the [federal Superfund]." *Id.* at 1143.

The court then held that the City should be allowed to recover its response costs despite its status as a PRP. *Id.* It stated: "I cannot conclude that the City's right to maintain this action is barred by the hypothetical possibility that had the federal or state government brought this suit, the City too would be liable.... The simple fact is that.... a party which has incurred response costs seeks to recover them from responsible parties, an action expressly authorized by CERCLA." *Id.*

Accordingly, the Court finds that traditional legal principles support PRP standing under Section 107.[12]

### D. The Case Law

There is a split of authority in this and other Circuits regarding the issue of PRP standing under Section 107. The recent trend holds that PRPs lack Section 107 standing. Nevertheless, this Court finds that the most persuasive cases support PRP standing. A survey of the relevant case law follows.

### 1. Supreme Court

In *Key Tronic Corp. v. United States*, 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), the Supreme Court addressed the question of whether attorney's fees are "necessary costs of response" within the meaning of CERCLA Section 107(a)(4)(B). The petitioner, one of several parties responsible for contaminating a landfill, had brought a Section 107 action to recover its cleanup costs from other responsible parties. The court concluded that a party suing under Section 107 may recover attorney's fees for the iden-

---

12. Evolving legal principles also support this conclusion. In Arizona, for instance, the state legislature chose to abolish traditional joint and several liability by enacting the Uniform Contribution Among Joint Tortfeasors Act, A.R.S. §§ 12–2501 to 12–2509. However, the legisla-ture expressly created an exception for environmental actions. *See* A.R.S. § 12–2506(D)(2) ("Nothing in this section prohibits the imposition of joint and several liability in a cause of action relating to hazardous wastes or substances or solid waste disposal sites.").

tification of other potentially responsible parties, but may not recover fees for the preparation and negotiation of an agreement with a government agency or for the prosecution of CERCLA litigation. *Id.* at ——, 114 S.Ct. at 1967.

The *Key Tronic* decision was based, in part, on the assumption that a liable party may prosecute a cost recovery action under Section 107. This assumption lends some support to Plaintiffs' argument. However, because the Supreme Court did not squarely confront the issues underlying this assumption, *Key Tronic* is of limited value in deciding the issue before this Court.

### 2. Circuit Courts of Appeal

Defendants assert that "[e]very Court of Appeals, including the Ninth Circuit, to consider the question has held that liable parties may sue under CERCLA only for contribution, regardless of whether the claim is pled under Section 107(a) or Section 113(f)(1)." (Joint Reply at 4.) (Emphasis omitted.) This assertion is inaccurate and misleading.

The First, Seventh, and Tenth Circuit Courts of Appeal have issued opinions supporting Defendants' position. *See United Technologies Corp. v. Browning–Ferris Indus., Inc.,* 33 F.3d 96, 98–103 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995); *Akzo Coatings v. Aigner Corp.,* 30 F.3d 761, 764–65 (7th Cir. 1994); *United States v. Colorado & Eastern R.R. Co.,* 50 F.3d 1530, 1535–36 (10th Cir. 1995).[13]

The Seventh Circuit, however, has not spoken with one voice. In *Amcast Indus. Corp. v. Detrex Corp.,* 2 F.3d 746, 748 (7th Cir. 1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994), Judge Posner recognized that CERCLA Section 107(a)(4)(B) "permits one responsible person

to recover all or part of its response costs from another." The *Akzo* decision does not cite or discuss *Amcast.*

The Sixth and Eighth Circuit Courts of Appeal have decided cases supporting Plaintiffs' position. *See Velsicol Chem. Corp.,* 9 F.3d at 529 (6th Cir.1993) (PRP may sue under section 107(a)(4)(B)); *General Electric Co.,* 920 F.2d at 1421 (8th Cir.1990) (liable party entitled to recover response costs under Section 107(a)(4)(B)). However, the Eighth Circuit has recently decided a case which appears to support Defendants. *See Control Data Corp. v. S.C.S.C. Corp.,* 53 F.3d 930, 934 n. 4 (8th Cir.1995)

Some language in *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664 (5th Cir.1989) supports Defendants. However, the *Amoco* court merely endorsed the application of Section 113(f) in discussing the allocation of cleanup costs among the parties, after liability itself had already been adjudicated. Nothing in *Amoco* suggests that the court dismissed the PRP plaintiffs' cost recovery claims.

The only Ninth Circuit case discussing the relationship between CERCLA Sections 107 and 113 is *In re Dant & Russell, Inc.,* 951 F.2d 246 (9th Cir.1991) ("*Dant & Russell* "). Plaintiffs and Defendants each claim this case supports their respective positions.

*Dant & Russell* concerned a Section 107 cost recovery claim brought by Burlington Northern ("BN") against the bankruptcy estate of Dant & Russell ("D & R"). BN's claim involved property it owned since 1958 and had leased to D & R from 1971–1983. In 1985, the EPA ordered BN to conduct "Immediate Removal and Stabilization Activities" of hazardous wastes on the property. BN spent approximately $1 million complying with the order. In 1985, BN filed its Section 107 claim in D & R's bankruptcy case, re-

---

**13.** These cases are distinguishable because they each involved the presence of "a direct external legal compulsion in the form of a government order or enforcement action." (Pls.' Resp. to Def. ARCO's Mot. to Dismiss Pls.' Cost Recovery Claims and Joinders of Other Defs. at 29.) According to Plaintiffs, the element of external legal compulsion is lacking here, because the ADEQ did not formally order Plaintiffs to initiate the cleanup. Defendants contest this characteriza-

tion of the facts; nevertheless, on motions to dismiss and for judgment on the pleadings, the facts as Plaintiffs have stated them must be taken as true. In addition, Plaintiffs' characterization finds support in *In re Dant & Russell, Inc.,* where the court considered BN's decision to undertake the long-term cleanup of its property as voluntary despite the EPA's order directing BN to take initial emergency cleanup measures. 951 F.2d 246, 248–49 (9th Cir.1991).

questing reimbursement in the amount of $14 million for past and future cleanup expenses. The bankruptcy court awarded BN approximately $7 million, and the district court affirmed.

On appeal, the Ninth Circuit considered two issues: (1) whether BN's claim was barred by Section 502(e)(1)(B) of the Bankruptcy Code; and (2) whether the bankruptcy court erred by apportioning liability between BN and D & R.

Section 502(e)(1)(B) of the Bankruptcy Code provides, in part, that a bankruptcy claim for reimbursement or contribution will be disallowed if "the party asserting the claim is liable with the debtor on the claim of a creditor." *Dant & Russell, Inc.*, 951 F.2d at 248. The Ninth Circuit concluded that BN's claim was not barred because the "co-liability" requirement of Section 502(e)(1)(B) was not present. *Id.*

In particular, the court found that the co-liability requirement did not exist because "third parties are not competing over D & R's funds for cleanup. BN's claim against these funds arises from *no external legal compulsion*—there is no third party creditor here." *Id.* (Emphasis added.) The court derived this conclusion from an analysis of BN's CERCLA claim. It noted that BN's claim arose under CERCLA Section 107(a)(4)(B), a "private right of action [which] encourages voluntary private action to remedy environmental hazards. . . . [and] furthers CERCLA's goal of responding to hazardous situations quickly." *Id.* The court further noted that while BN had initially incurred some cleanup costs pursuant to an EPA order, it had voluntarily embarked on further

cleanup operations without "EPA arm-twisting." *Id.* Therefore, there was no third party to whom both BN and D & R were "liable with" for the costs of BN's cleanup, and BN's claim was not barred by the Bankruptcy Code. *Id.* at 249.

The court next considered whether the bankruptcy court erred by allocating liability between the parties, instead of shifting the entire liability to D & R. For purposes of allocating liability, the court held that CERCLA Section 113(f)(1) applied to BN's claim. It stated: "This section applies in this case for at least three reasons: (1) BN has admitted CERCLA liability; (2) this is a civil action under § 9607(a); and (3) D & R is arguing that BN should contribute to the cleanup operations." *Id.* The court therefore affirmed the Bankruptcy Court's allocation of liability between BN and D & R. *Id.*

While the *Dant & Russell* opinion is not a model of clarity, it appears to support Plaintiffs' argument that PRPs have standing to assert Section 107 cost recovery claims. The court based its holding that Section 502(e)(1)(B) of the Bankruptcy Code did not bar BN's claim on the fact that BN's claim was for cost recovery, not contribution. If BN's claim had arisen under CERCLA Section 113(f) in the first instance, then BN and D & R would have been co-liable to a third party. *Cf.* 42 U.S.C. § 9613(g)(3) (statute of limitations for contribution actions begins to run after entry of judgment, administrative order, or settlement). The existence of co-liability would have barred BN's bankruptcy claim. Therefore, the court's holding depends on the characterization of BN's claim as one for cost recovery.[14]

---

14. Defendants suggested at oral argument that the Ninth Circuit's opinion directly approved the reasoning of the District Court, which held that cleanup costs could be allocated between BN and D & R because "regardless of how BN characterized its CERCLA claim, the claim should be evaluated according to equitable principles of contribution." (*In re Dant & Russell, Inc.*, CV 86–0746–PA, at 11 (D. Oregon May 8, 1989), copy attached to Defs.' Joint Reply.) In particular, counsel pointed to the following language in *In re Dant & Russell, Inc.*, 951 F.2d 246, 249 (9th Cir.1991): "For the reasons cited by the district court, we hold that the bankruptcy court did not abuse its discretion in this equitable apportionment of liability."

Counsel reads too much into this statement. The statement followed a review of the lower courts' apportionment of costs between BN and D & R, thereby indicating the Ninth Circuit's approval of the lower courts' allocation methodology. The statement does not indicate approval for the District Court's reasoning in applying contribution principles. Instead of merely adopting the District Court's reasoning, the Ninth Circuit set forth its own explanation of why CERCLA section 113(f) applied to the parties' dispute. That explanation indicates that the Ninth Circuit treated D & R's request for an allocation of costs as an implied contribution counterclaim. *See In re Dant & Russell, Inc.*, 951 F.2d at 249 (applying section 113(f) in part

Defendants urge this Court to draw a contrary principle from *Dant & Russell:* That when one PRP sues another, the action is for contribution. The Court cannot accept this reading, because it is inconsistent with the logic of the Ninth Circuit's opinion. Accordingly, this Court does not follow cases that have read *Dant & Russell* in a pro-defendant manner. *See, e.g., Akzo*, 30 F.3d at 761 (7th Cir.1994) (citing *Dant & Russell* for the proposition that CERCLA claims brought by liable parties are "quintessential" contribution claims).

Cases such as *Akzo*, in addition to misreading *Dant & Russell*, engage in gross oversimplification when they state that a PRP's cost recovery action is in substance a mere claim for contribution. These cases fail to give due weight to statutory distinction between PRPs who incur response costs and those who do not—a distinction recognized by the Ninth Circuit in its discussion of the nature of BN's Section 107 claim. *Dant & Russell, Inc.*, 951 F.2d at 248. In addition, these cases fail to recognize that PRPs who are foreclosed from suing under Section 107 will be strongly discouraged from initiating cleanups—a result plainly inconsistent with CERCLA's fundamental goals. Accordingly, this Court finds such cases unpersuasive and refuses to follow them.

### 3. District Courts

Federal district courts—both in the Ninth Circuit and elsewhere—have split on the issue of whether an action brought by one potentially responsible party against another may proceed under Section 107. *Compare Transportation Leasing Co. v. State of California*, 861 F.Supp. 931, 938 (C.D.Cal.1993) ("CERCLA permits [PRP] plaintiffs to sue under § 107. Section 113 does not abrogate § 107 but instead codifies the efforts of federal courts to imply a contribution remedy to assist those held jointly and severally lia-

ble."); *Pinole Point Properties, Inc. v. Bethlehem Steel Corp.*, 596 F.Supp. 283, 291 (N.D.Cal.1984); *Idylwoods Assoc. v. Mader Capital, Inc.*, 915 F.Supp. 1290, 1312–14 (W.D.N.Y.1996); *United States v. J.M. Taylor*, 909 F.Supp. 355, 366 (M.D.N.C.1995) (whether a party may utilize Section 107 depends on whether it has incurred "necessary costs of response," not on whether that party is potentially responsible); *Barmet Aluminum Corp. v. Brantley & Sons, Inc.*, 914 F.Supp. 159, 161 (W.D.Ky.1995); *Town of Wallkill v. Tesa Tape Inc.*, 891 F.Supp. 955, 960 (S.D.N.Y.1995) ("even if the Town were not a governmental plaintiff, it would be entitled to maintain both § 107 and § 113 claims"); *Bethlehem Iron Works*, 891 F.Supp. at 225 (permitting plaintiffs to raise Section 107 claims comports with CERCLA's goal of encouraging prompt voluntary private party cleanups; any unfairness that might result from the imposition of joint and several liability will be remedied through the resolution of defendant's contribution counterclaim); *United States v. Atlas Minerals and Chem., Inc.*, No. 91–5118, 1995 WL 510304, at *76–81, 1995 U.S.Dist. LEXIS 13097, at *211–230 (E.D.Pa. Aug. 22, 1995); *Companies for Fair Allocation v. Axil Corp.*, 853 F.Supp. 575, 580 (D.Conn.1994); *with, Catellus Dev. Corp. v. L.D. McFarland Co.*, 910 F.Supp. 1509, 1513–16 (D.Or.1995) (PRPs are joint tortfeasors; therefore they cannot impose joint and several liability on defendants under Section 107); *City of Fresno v. NL Indus., Inc.*, No. CV-F 93–5091 REC/DLB, 1995 WL 641983, at *5, 1995 U.S.Dist. LEXIS 15534, at *19–20 (E.D.Cal. July 12, 1995); *T H Agriculture & Nutrition Co., Inc. v. Aceto Chemical Co., Inc.*, 884 F.Supp. 357, 360 (E.D.Cal.1995) (weight of authority supports finding that PRP may only seek contribution for response costs); *Kaufman & Broad–South Bay v. Unisys Corp.*, 868

because D & R argued that BN should contribute to the cleanup costs.

In addition, the Ninth Circuit did not follow the District Court's reasoning concerning the issue of whether BN's claim was barred by section 502(c)(1)(B) of the Bankruptcy Code. Instead of finding (as the District Court did) that the claim was not barred because it was not contingent,

the Ninth Circuit held that the claim was not barred because—due to the nature of BN's CERCLA section 107 claim—BN and D & R were not co-liable to a third party. Therefore, if the Ninth Circuit had approved the District Court's analysis of BN's claim as one that could be analyzed according to contribution principles, that approval would conflict with the Ninth Circuit's bankruptcy analysis.

F.Supp. 1212, 1216 (N.D.Cal.1994); *Kamb v. U.S. Coast Guard,* 869 F.Supp. 793, 799 (N.D.Cal.1994) (*In re Dant & Russell* dictates that action brought by PRP sounds in contribution); *Plaskon Elec. Materials, Inc. v. Allied–Signal, Inc.,* 904 F.Supp. 644, 652 (N.D.Ohio 1995) (PRP's Section 107 claim must be construed as a contribution action); *New Castle County v. Halliburton NUS Corp.,* 903 F.Supp. 771, 779 (D.Del.1995); *The Ekotek Site PRP Comm. v. Self,* 881 F.Supp. 1516 (D.Utah 1995). For the reasons set forth above, the Court finds persuasive those cases favoring Plaintiffs' position.

Accordingly, Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings concerning Plaintiffs' federal cost recovery claims are denied.

### State Law Cost Recovery Claims

■ Defendants also seek dismissal of Plaintiffs' state law cost recovery claims. These claims arise under A.R.S. § 49–285(A), which provides that "any other person" in addition to the state may bring an action to recover remediation costs. Nothing in this or any other related statutory provision suggests that the Arizona legislature intended this cause of action to be limited to only "innocent" persons. The Court must construe the plain language of the statute to allow Plaintiffs to state their cost recovery claims under A.R.S. § 49–285. *See Janson v. Christensen,* 167 Ariz. 470, 808 P.2d 1222, 1223 (1991) ("the most reliable index of a statute's meaning is its language and when the language is clear and unequivocal it is determinative of the statute's construction"). Accordingly, Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings concerning Plaintiffs' state law cost recovery claims are denied.

### ARCO's Motion to Dismiss Inspiration's Contribution Claim

■ In a separate motion, ARCO seeks dismissal of Plaintiff Inspiration Consolidated Copper Company's ("Inspiration") cost recovery and/or contribution claims against ARCO. ARCO contends that Inspiration is attempting to shift its corporate liabilities to ARCO merely because a corporate predecessor to ARCO once held a minority ownership interest in Inspiration. ARCO further contends that under well-established principles of corporate law, a corporation may not pierce the corporate veil in order to impose liability on its own shareholders.

ARCO's motion is misplaced because Inspiration is not attempting to pierce its own corporate veil. Rather, Plaintiffs' complaint alleges that ARCO is directly liable under CERCLA as a former "owner or operator" of polluting facilities in the Pinal Creek drainage basin. *See* 42 U.S.C. § 9607(a)(2).

According to the Complaint, Inspiration operated various mines and mining-relating properties from 1923 to June 1988 in the Pinal Creek area. Until 1976, the Anaconda Company—which merged into ARCO in 1981—controlled and actively participated in the operations of Inspiration, "directly or through its wholly-owned subsidiary ISRC [International Smelting and Refining Company]. This control and participation was accomplished through direct or indirect ownership of a controlling interest in Inspiration, and common officers, directors and senior management personnel." (Complaint at ¶ 32.) The Complaint also alleges that, "[a]s a result of their common control by Anaconda, the activities of ISRC and Inspiration were closely coordinated, and the companies shared numerous resources and operations, including employees, water sources [and] machinery.... Anaconda [also] exercised a controlling influence over the management, policies and operations of both ISRC and Inspiration, including their environmental practices...." (*Id.* at ¶ 33.)

These allegations are sufficient to set forth a claim for "owner or operator" liability under CERCLA Section 107. *See Kaiser Aluminum & Chem. Corp. v. Catellus Dev. Corp.,* 976 F.2d 1338, 1341–42 (9th Cir.1992) ("operator" liability attaches if defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment). *See also United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1557 (11th Cir.1990) (corporation that was an owner through holding a security interest and became active in the management of the corporation held liable under

CERCLA); *United States v. Kayser–Roth Corp., Inc.,* 910 F.2d 24, 27–28 (1st Cir.1990) (parent corporation which exerted practical total influence and control over subsidiary's operations, including environmental matters, subjected to CERCLA liability), *cert. denied,* 498 U.S. 1084, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991); *Idylwoods Assoc.,* 915 F.Supp. at 1306–07 (operator liability imposed upon parent corporation that exercised extensive control over subsidiary's management and operations).

In particular, Defendants' arguments are squarely rejected in *Sidney S. Arst v. Pipefitters Welfare Educ. Fund,* 25 F.3d 417, 420–21 (7th Cir.1994). In *Arst,* the district court granted a motion to dismiss the plaintiff's Section 107 claim on the ground that the complaint failed to state sufficient allegations that would justify "piercing the corporate veil" under Illinois law. *Id.* at 419.

The Seventh Circuit reversed, holding that the complaint contained sufficiently specific allegations of defendant's control over the polluting company's operations to support the imposition of "owner or operator" liability under CERCLA Section 107(a)(2). *Id.* at 420. The court observed that the CERCLA provision for "owner or operator" liability may occasionally conflict with state corporate law. Nevertheless, such conflict is unavoidable under the broad liability provisions of CERCLA. This is because, in enacting CERCLA, "Congress intended that those responsible for problems caused by the disposal of chemical poisons bear the costs and responsibility for remedying the harmful conditions they created.... These statutory goals indicate the corporate form alone will not shield entities that exhibit significant indicia of responsibility from CERCLA liability." *Id.* (*quoting John Boyd Co. v. Boston Gas Co.,* 775 F.Supp. 435, 441 (D.Mass.1991)).

Similarly, the Court finds that Plaintiffs' Complaint contains sufficient allegations of ownership and control to support the direct imposition of "owner or operator" liability upon ARCO. Therefore, ARCO's motion is denied.

Accordingly,

**IT IS ORDERED** denying Defendants' Motion to Dismiss Plaintiffs' Cost Recovery Claims and Defendants' Motion for Judgment on the Pleadings as to Plaintiffs' Cost Recovery Claims (Document No. 374 and 384).

**FURTHER ORDERED** denying Defendant ARCO's Motion to Dismiss Inspiration's Contribution Claim (Document No. 375).