### ADHESIVES RESEARCH INC., et al., Plaintiffs,

v.

### AMERICAN INKS & COATINGS CORPORATION, et al., Defendants.

**Civil Action No. 1:CV–95.**

United States District Court, M.D. Pennsylvania.

July 30, 1996.

Neil R. Bigioni, Saul Ewing Remick & Saul, Phildelphia, PA, Richard H. Friedman, Harrisburg, PA, John F. Stoviak, William J. Cluck, Saul, Ewing, Remick & Saul, Harris-burg, PA, for plaintiffs Adhesives Research, Inc., Albemarle Corporation, Successor to Ethyl Corporation/Saytech, Inc., Alcolac, Inc., Allsteel, Inc., Alumax Mill Products, Inc., Aluminum Company of America, American Recovery Company, Inc., AMP Incorporation, Armstrong World Industries, AIG, Inc., Atlas Roofing Corporation, Baldwin Hardware Corporation, Baltimore Gas & Electric, Beazer East, Inc., Biomatrix, Inc., Brodart Co., Brubaker Tool Corporation, Buck Co., Inc., Carr–Lowrey Glass Co., CCX, Inc., Cerro Metal Products Co., Chem Clear of Baltimore, Inc., Chemtron Corp., Chicago Rivet and Machine Co., Crown Beverage Packaging, Inc., C–P Converters, Inc., David Edward Co., Ltd., Del Laboratories, Inc., DMI Furniture, Inc., Dock Resins Corporation, Dow Chemical Company, E.R. Squibb & Sons, Inc., Electronic Devices, Inc., Elf Lubricants North America, Inc., Essex Chemical Corporation for Essex Industrial Chemicals, Federal Paper Board Company, Inc., Federated–Fry Metals, Fry Metals, Inc. dba Alpha Metals, Inc., FKI Industries, Inc., Fruehauf Trailer Corporation, Gamse Lithographing Company, Incorporated of Delaware, Ganes Chemicals, Inc., Georgia–Pacific Corporation, GPI Interim, Inc., Grove North America, Grow Group, Inc., GS Electric (Division of General Signal Technology Corp. (GSTC)), H & N Chemical Co., Harley–Davidson Motor Company, Hargro Flexible Packaging Corp., Harsco Corporation, Hartin Paint & Filler Corp., Health Chem Corporation, Hewlett–Packard Company, Huls America, Inc., Hy–Art Lamp Manufacturing Co., Imperial Specialty, Inc. (f/k/a ITT Engineered Valves/ITT Fluid Products Corp. and ITT Grinnell Corp.), J. Josephson, Inc., Kaydon Ring and Seal, Inc., Kirker Chemical Corp., Laboratory Service, Inc., Lever Brothers Company, Litton Systems, Inc., Electron Devices Division, Manley Badger, Inc., McCorquodale Process, Inc., Metropolitan Edison Company, Mid Atlantic Label I, Milton Can Company Inc., Morgan Trailer Mfg. Co., Murata Electronics North America, Inc., New Standard Corporation, Para–Chem Southern, Inc., Penguin Industries, Inc., Pennex Aluminum Company, Philips Lighting Company, Division of Philips Electronics

North America Corporation, Piezo Crystal Company, PMC–Fords Division, Division of PMC, Inc., Primesource, Corp. f/k/a Phillips & Jacobs Inc., Protection Services, Inc., Quebecor Printing Memphis Inc., Rambach Corporation, Reichhold Chemicals, Inc., Revlon Consumer Products Corporation, Rohm and Haas Company, Root Corporation dba New York Wire Company, Root Corporation dba Ram's Head Wire Company, Royson's Corporation, Sequa Corporation, Sequa Corporation (f/k/a Sun Chemical Corporation), Sermatech International Incorporated, Seton Company, Sherwin–Williams Company, Sika Corporation, SKF U.S.A., Inc., Sonoco Fibre Drum, Sonoco Products Company, Springs Window Fashions Division, Inc. (Successor by Merger to Carey–McFall Corporation), Standard Steel Division, Freedom Forge Corp., State of the Art, Inc., Stoney Mueller, Inc., Technical Coatings Co., Technigraphics of Maryland, Inc., Transfer Print Foils, Inc., Union Carbide Corporation, Union Corporation, United Metal Receptacle Corporation, Viking Yacht Company, Western Atlas Inc. (Landis Division), Westinghouse Electric Corporation, Westvaco Corporation, York Corrugating Company, York International Corporation and All plaintiffs.

Christopher H. Marraro, Howrey & Simon, Washington, DC, William H. Bradbury, III, Norristown, PA, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant American Inks and Coatings Corporation.

John M. Armstrong, Schnader Harrison Segal & Lewis, Philadelphia, PA, and Cherry Hill, NJ, Christopher H. Marraro, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Crompton & Knowles Corporation.

Randall M. Lutz, Patricia McHugh Lambert, Michael R. McCann, Smith, Somerville & Case, Baltimore, MD, for defendants Ace Spray Finishing Corporation (a/k/a Ace Spray Finishing Co., Inc.), Luby Chevrolet Co., Inc., Rearden Metal Products, Inc.

Christopher H. Marraro, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Atronics, Inc.

Christopher H. Marraro, Howrey & Simon, Washington, DC, for defendant Biddle Sawyer, Inc.

Christopher H. Marraro, Howrey & Simon, Washington, DC, Steven T. Singer, Bloomfield, NJ, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Chambord Prints, Inc.

Marybeth Scriven, John H. Norton, Norton & Bowman, Clifton, NJ, for defendant Columbia Leather and Coating Corporation.

Christopher H. Marraro, Howrey & Simon, Washington, DC, Alexander Pobedinsky, O'Hara, Hanlon, Knych & Pobedinsky, Syracuse, NY, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Coyne Intern. Enterprises, Inc.

Steven T. Singer, Bloomfield, NJ, for defendant Custom Chemicals Corporation.

Christopher H. Marraro, Howrey & Simon, Washington, DC, Kevin M. McKenna, Kleinbard, Bell & Brecker, Philadelphia, PA, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Dynamics Corporation of America (Reeves–Hoffman Division).

Christopher H. Marraro, Howrey & Simon, Washington, DC, Brian G. West, Koehler & West, Towson, MD, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Ed & Jim's Body Shop, Inc.

David B. Corneal, State College, PA, for defendant Geco, Inc. (a/k/a Gryozuk Electronics Company, Inc.)

Debra L. Rothberg, Periconi & Rothberg, P.C., New York City, for defendant George Kovacs Lighting, Inc. (a/k/a George Kovacs Lighting Co.)

Christopher H. Marraro, Howrey & Simon, Washington, DC, John J. Mezzanotte, Jr., Barnard & Gannon, Media, PA, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Graham Architectural Products Corporation.

Chuck Hicks, Lonoke, AR, for defendant Gunnebo Manufacturing Corporation (a/k/a U.S.E. Diamond).

Christopher H. Marraro, Howrey & Simon, Washington, DC, Stewart Fuhrmann, Colas, Inc., Short Hills, NJ, Gilbert Keteltas,

Howrey & Simon, Washington, DC, for defendant IA Construction Corporation.

James T. Banks, Jody M. Foster, Hogan & Hartson, Washington, DC, Christopher H. Marraro, Howrey & Simon, Washington, DC, Scott H. Reisch, Hogan & Hartson, L.L.P., Denver, CO, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Ferranti International Simulation and Training (U.S.) Inc. (f/k/a ISC Defense Systems, Inc. and f/k/a International Signal).

Christopher H. Marraro, Howrey & Simon, Washington, DC, James P. Nolan, Susan T. Ford, Council, Baradel, Kosmerl & Nolan, P.A., Annapolis, MD, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Kanasco, Ltd., Inc.

Christopher H. Marraro, Howrey & Simon, Washington, DC, Laura C. McWeeney, Assistant Attorney General, Maryland Department of Transportation, BWI Airport, MD, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Maryland Mass Transit Administration.

C. Kent Price, Thomas, Thomas & Hafer, Harrisburg, PA, for defendant Olivetti Supplies, Inc.

Arthur J. Becker, Jr., Countess Gilbert Andrews, York, PA, Christopher H. Marraro, Gilbert Keteltas, Howrey & Simon, Washington, DC, Michael Walter Flannelly, Morgan and Flannelly, York, PA, for defendant Precision Components Corp.

Robert G. Del Gadio, Uniondale, NY, for defendant Pride Solvents & Chemicals Company, Inc.

Christopher H. Marraro, Howrey & Simon, Washington, DC, John D. Goldsmith, Carpenter, Bennett & Morrissey, Newark, NJ, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Quality Wallcovering, Inc.

Lisa Kershner, William F. Ryan, Jr., Whiteford, Taylor & Preston, Baltimore, MD, for defendant Shredded Paper Products Co., Inc.

Christopher H. Marraro, Howrey & Simon, Washington, DC, R. Eric Vogt, Texaco Legal Department, White Plains, NY, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Texaco, Inc.

Christopher H. Marraro, Howrey & Simon, Washington, DC, John E. Griffith, Jr., Piper & Marbury, L.L.P., Baltimore, MD, Stephanie P. Brown, Piper & Marbury L.L.P., Baltimore, MD, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant Thomas Manufacturing Corporation.

Christopher H. Marraro, Howrey & Simon, Washington, DC, Doreen A. Simmons, Neil M. Gingold, Hancock & Estabrook, L.L.P., Syracuse, NY, Gilbert Keteltas, Howrey & Simon, Washington, DC, for defendant C.H. Thompson Company, Inc.

Paul S. Aufrichtig, Peter D. Aufrichtig, Aufrichtig Stein & Aufrichtig, P.C., New York City, for defendant Tishcon Corporation.

Christopher R. Schraff, Martin S. Seltzer, Porter, Wright Morris & Arthur, Columbus, OH, for defendant Vernon Plastics Corporation (f/k/a Fabric Leather Corporation).

David J. Parsells, LaBrum & Doak, Philadelphia, PA, for defendant Zeb Manufacturing, Inc.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is the Industrial Solvent & Chemical Company ("ISCC") Defendant group's [1] motion to dismiss Plaintiffs' first claim for relief. Plaintiffs [2] filed the instant

1. The court has been apprised that the following members of the ISCC Defendant group are participating in the instant motion to dismiss: American Inks & Coatings Corporation, Biddle Sawyer Corporation, C.H. Thompson Co., Inc., Chambord Prints Custom Chemicals, Columbia Leather and Coating Corp., Coyne International Enterprises Corp., Crompton & Knowles, Dynamics Corporation of America, Ed & Jim's Body Shop, Inc., Ferranti Simulation and Training (U.S.) Inc., Graham Architectural Products Corporation, I.A. Construction Corp., Kanasco, Ltd., Precision Components Corporation, and Thomas Manufacturing Corp. The Maryland Mass Transit Administration initially joined in the motion, but has since been voluntarily dismissed from the action.

2. Plaintiffs are the following parties: Adhesives Research, Inc.; Albemarle Corporation, Successor to Ethyl Corporation/Saytech, Inc.; Alcolac, Inc.; Allsteel, Inc.; Alumax Mill Products, Inc.;

action seeking, *inter alia*, to recover costs for the initial cleanup of the ISCC site pursuant to 42 U.S.C. § 9607 (CERCLA § 107) and contribution pursuant to 42 U.S.C. § 9613 (CERCLA § 113). The ISCC Defendants ("Defendants") argue that Plaintiffs, as liable/responsible parties, are unable to bring a cost recovery action. The parties have briefed the issues and the motion is ripe for disposition.

## I. Background

The instant action arises from the cleanup of the ISCC site in Newberry Township, York County, Pennsylvania.[3] Plaintiffs seek to recover cleanup and other response costs incurred by them or their predecessors from the Defendants and/or to obtain contribution from the Defendants, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), 42 U.S.C. §§ 9607(a) and 9613(f), the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 P.S. §§ 6020.507, 6020.701, 6020.702, 6020.705, 6020.1101, the Pennsylvania Uniform Contribution Among Tort–Feasors Act ("PUCTA"), 42 Pa. Cons. Stat.Ann. §§ 8321 *et seq.*, and Pennsylvania common law.

Plaintiffs' involvement with cleanup of the ISCC site began in 1990 when the Pennsylvania Department of Environmental Protection ("PADEP") targeted by letter over 900 potentially responsible parties ("PRPs") including Plaintiffs. This letter notified the PRPs that the PADEP had determined that a re-

Aluminum Company of America; American Recovery Company, Inc.; AMP Incorporated; Armstrong World Industries, Inc.; AIG, Inc.; Atlas Roofing Corporation; Baldwin Hardware Corporation; Baltimore Gas and Electric Company; Beazer East, Inc.; Biomatrix, Inc.; Brodart Co.; Brubaker Tool Corporation; Buck Co., Inc.; Carr–Lowrey Glass Co.; CCX, Inc.; Cerro Metal Products Co.; Chem Clear of Baltimore, Inc.; Chemtron Corp.; Chicago Rivet and Machine Co.; Crown Beverage Packaging, Inc.; C–P Converters, Inc.; David Edward Co., Ltd.; Del Laboratories, Inc.; DMI Furniture, Inc.; Dock Resins Corporation; The Dow Chemical Company; E.R. Squibb & Sons, Inc.; Electronic Devices, Inc.; Elf Lubricants North America, Inc.; Essex Chemical Corporation for Essex Industrial Chemicals; Federal Paper Board Company, Inc.; Federated–Fry Metals; Fry Metals, Inc., d/b/a Alpha Metals, Inc.; FKI Industries, Inc. (f/k/a Babcock Industries, Inc./ACCO Babcock, Inc./Babcock ACCO, Inc./ACCO Industries, Inc./American Chain and Cable Company, Inc.); Fruehauf Trailer Corporation; Gamse Lithographing Company, Incorporated of Delaware; Ganes Chemicals, Inc.; Georgia–Pacific Corporation; GPI Interim, Inc.; Grove North America; Grow Group, Inc.; GS Electric (Division of General Signal Technology Corp. (GSTC)); H & N Chemical, Co.; Harley–Davidson Motor Company; Hargro Flexible Packaging Corp.; Harsco Corporation; Hartin Paint & Filler Corp.; Health–Chem Corporation; Hewlett–Packard Company; Huls America, Inc.; Hy–Art Lamp Manufacturing Co.; Imperial Specialty, Inc.; ITT Corporation, (f/k/a ITT Engineered Valves/ ITT Fluid Products Corp. and ITT Grinnell Corp.); J. Josephson, Inc.; Kaydon Ring and Seal, Inc.; Kirker Chemical Corp.; Laboratory Service, Inc.; Lever Brothers Company; Litton Systems, Inc., Electron Devices Division; Manley Bager, Inc.; McCorquodale Process, Inc.; Metropolitan Edison Company; Mid Atlantic Label, Inc.; Milton Can Company Inc.; Morgan Trailer Mfg. Co.; Murata Electronics North America, Inc.; New Standard Corporation; Para–Chem Southern, Inc.; Penguin Industries, Inc.; Pennex Aluminum Company; Philips Lighting Company, a Division of Philips Electronics North America Corporation; Piezo Crystal Company; PMC–Fords Division, a Division of PMC, Inc.; Primesource, Corp., (f/k/a Phillips & Jacobs, Inc.); Protection Services Inc.; Quebecor Printing Memphis Inc.; The Rambach Corporation; Reichhold Chemicals, Inc.; Revlon Consumer Products Corporation; Rohm and Haas Company; Root Corporation, d/b/a New York Wire Company; Root Corporation, d/b/a Ram's Head Wire Company; Royson's Corporation; Sequa Corporation (f/k/a Sun Chemical Corporation); Sermatech International Incorporated; Seton Company; The Sherwin–Williams Company; Sika Corporation; SKF USA, Inc.; Sonoco Fibre Drum; Sonoco Products Company; Springs Window Fashions Division, Inc. (Successor by Merger to Carey–McFall Corporation); Standard Steel Division, Freedom Forge Corp.; State of the Art, Inc.; Stoney Mueller, Incorporated; Technical Coatings Co.; Technigraphics of Maryland, Inc.; Transfer Print Foils, Inc.; Union Carbide Corporation; The Union Corporation; United Metal Receptacle Corporation; Viking Yacht Company; Western Atlas Inc. (Landis Division); Westinghouse Electric Corporation; Westvaco Corporation; York Corrugating Company; York International Corporation.

**3.** Between 1974 and approximately July of 1989, the Industrial Solvents Chemical Company operated the site as a commercial solvents reprocessing facility. The site was used for the transportation, storage and distribution of recycled solvents, and the transport and storage of hazardous materials. The ISCC abandoned the site on or about July 1990.

lease or threatened release of hazardous substances had occurred at the ISCC site, and that each letter recipient was potentially liable for response and cleanup costs pursuant to the HSCA. On October 26, 1991, the PADEP placed the ISCC site on the Pennsylvania Priority List for remedial response. Subsequently, Plaintiffs agreed to become site response providers ("SRPs"), and have since entered into three separate Consent Orders and Agreements ("COAs") with the PADEP to facilitate cleanup of the ISCC site. *See* COA I, dated August 11, 1993; COA II, dated December 6, 1993; and COA III, dated August 3, 1994.

Defendants contend that Plaintiffs are liable/responsible parties pursuant to both CERCLA and the HSCA, and thus, are incapable of bringing a § 107 cost recovery action. Defendants' argument finds support in the recent case law trend which reads CERCLA, as amended by the Superfund Amendments and Reauthorization Act ("SARA"), as prohibiting cost recovery actions by PRPs. Plaintiffs, to the contrary, argue that despite the recent trend, the plain language and legislative intent of CERCLA and SARA provide private parties with the right to proceed with a cost recovery action under § 107. A minority of recently decided cases on the issue have adopted reasoning in keeping with Plaintiffs' argument. The central issue before the court, whether a PRP has standing to bring a § 107 cost recovery action, is presently a hotly-debated legal issue. Neither the Supreme Court nor the Third Circuit has directly ruled on the issue. Moreover, precedent at both the district and circuit court levels is sufficiently contradictory and muddled as to provide little coherent assistance. Accordingly, the court will evaluate the statutory framework created by CERCLA, the countervailing policies behind CERCLA, and the case law that has developed to interpret CERCLA before reaching the merits of the instant motion to dismiss.

## II. *Legal Standard: Motion to Dismiss*

Under Rule 12(b)(6), "a complaint should not be dismissed for failure to state a claim

unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must " 'take all well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff,' and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township*, 838 F.2d 663, 665–66 (3d Cir.1988) (quoting *Estate of Bailey by Oare v. County of York*, 768 F.2d 503, 506 (3d Cir.1985)), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). "Because 12(b)(6) results in a determination on the merits at an early stage of the case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn." *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977).

## III. *Statutory Framework of CERCLA and SARA*

In enacting CERCLA, the federal government sought to foster the prompt cleanup of hazardous waste sites nationwide. *See* Pub.L. No. 96–510, 94 Stat. 2767 (1980) (CERCLA was created to "provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of inactive hazardous waste disposal sites.").

> When the EPA determines the release or threatened release of a hazardous substance at a site appears to warrant remedial action under CERCLA, it places the site on the NPL ["National Priorities List"]. The EPA then administers the cleanup and related activities itself, or ... authorizes a state agency to do so. CERCLA places the ultimate financial liability for cleanup costs on those responsible under CERCLA for the wastes.

*Sayreville v. Union Carbide Corp.*, 923 F.Supp. 671, 676 (D.N.J.1996) (internal citations omitted).[4]

---

**4.** The pleadings indicate that the ISCC site has been placed on the "Pennsylvania Priority List."

There is no indication that the site has also been placed on the NPL. The court presumes that

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), enumerates the classes of persons that can be held liable for CERCLA violations. These persons are referred to as "potentially responsible parties." The following PRPs are subject to CERCLA liability: (1) present owners or operators of a hazardous waste site, (2) persons who owned or operated the site at the time when hazardous materials were disposed of at the site, (3) persons who arranged for the disposal of wastes at the site, and (4) persons who transported wastes to the site for disposal. 42 U.S.C. § 9607(a). Pursuant to § 107(a)(4)(B), "any other person" may sue to recover its response costs. Moreover, although not expressly stated within the text of the statute, courts to rule on the issue have nearly unanimously determined that liability under § 107 is joint and several unless the defendant can demonstrate that the harm is divisible. *Pinal Creek Group v. Newmont Min. Corp.*, 926 F.Supp. 1400, 1404 (D.Ariz.1996) (citing *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 268–69 (3d Cir.1992)). The defenses available to § 107 defendants are limited by the statute, and liability may be imposed without proof of causation. *Pinal Creek Group*, 926 F.Supp. at 1404 (noting that "[s]ection 107 defendants are strictly liable").

An important goal of this private cost recovery action framework is to "encourage timely cleanup of hazardous waste sites." *Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 935 (8th Cir.1995). In theory, parties should be more eager to voluntarily or promptly undertake cleanup of a contaminated site if they know that they will be able to recover their response costs. Moreover, as originally drafted, CERCLA did not provide for contribution actions; instead, only actions for cost recovery pursuant to § 107 were available to parties involved in site cleanup. *See United States v. Colorado & Eastern R. Co.*, 50 F.3d 1530, 1535 (10th Cir.1995); *United Technologies Corp. v. Browning–Ferris Industries*, 33 F.3d 96, 98 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995). Prior to 1986, courts used the common law to imply rights

of action for contribution among PRPs where necessary to "alleviate the potentially unfair burden that joint and several liability may cause." *Pinal Creek Group*, 926 F.Supp. at 1404; *see Colorado & Eastern R. Co.*, 50 F.3d at 1535 (noting that courts implied a right of action for contribution where it was evident that the plaintiff had contributed more than its pro rata share of costs to the cleanup effort); *Browning–Ferris*, 33 F.3d at 100 (citing cases).

In 1986, Congress passed SARA which added an express cause of action for contribution to the CERCLA statutory framework. "A principal goal of the new § 9613 [ (CERCLA § 113) ] was to 'clarif[y] and confirm[ ] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances.'" *Browning–Ferris*, 33 F.3d at 100 (quoting S.Rep. No. 11, 99th Cong., 1st Sess. 44 (1985), *reprinted in* 2 *Legislative History of the Superfund Amendments and Reauthorization Act of 1986*, 636, Sp. Print 101–120 (101st Cong., 2d Sess.) (1990)). Unfortunately, this attempt to "clarify and confirm" the right to contribution pursuant to CERCLA has actually resulted in a substantial amount of confusion regarding the interplay between §§ 107 and 113. *See Pinal Creek Group*, 926 F.Supp. at 1404 ("Instead of clarifying and confirming the right of contribution, however, these amendments 'ignited a firestorm' of litigation and judicial controversy.") (quoting Ann Alexander, Standing Under Superfund §§ 107 and 113; Avoiding the Error of the Blind Man and the Elephant, Toxics L.Rptr. (BNA) 155 (July 12, 1995)); *Colorado & Eastern R. Co.*, 50 F.3d at 1535 (noting that the broad language of CERCLA "has given the courts many challenges"); *Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664, 667 (5th Cir.1989) (noting that CERCLA "has 'acquired a well-deserved notoriety for vaguely-drafted provisions and an indefinite, if not contradictory, legislative his-

there is or was some interaction between the EPA and the PADEP with respect to the ISCC site.

tory' "); Mark A. Stach, *Only "Innocent" Parties Need Apply: The Death of Private Party Cost Recovery Actions Under Superfund?*, 20 Wm. & Mary Envtl. L. & Pol'y Rev. 33, 36 (1995) ("Some of the confusion engendered by ... [CERCLA] revolves around its provisions for the recovery of costs by private parties who have expended funds to cleanup sites. Nowhere is this confusion more apparent than in court decisions dealing with CERCLA's two statutory mechanisms for the recoupment of cleanup costs....").

## IV. *Discussion*

### A. *Statutory Interpretation*

■ The canons of statutory construction dictate that the court begin its inquiry with the plain language of the statute. *In re Segal,* 57 F.3d 342, 345 (3d Cir.1995) (citing *Mansell v. Mansell,* 490 U.S. 581, 588, 109 S.Ct. 2023, 2028, 104 L.Ed.2d 675 (1989)). Moreover, "where 'the terms of a statute [are] unambiguous, judicial inquiry is complete except in rare circumstances.' " *Segal,* 57 F.3d at 346 (quoting *Taylor v. Freeland & Kronz,* 938 F.2d 420, 424 (3d Cir.1991), *aff'd,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992)) (alteration in original); *see also United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 260 (3 Cir.1992) (interpreting CERCLA and noting that where the statute is plain on its face the court "need not resort to legislative history to uncover its meaning"). Only where the literal reading of a statute will cause an outcome clearly at odds with the intent of its drafters will the court look beyond the plain language of the statute for its meaning. *Segal,* 57 F.3d at 346. In relevant part, § 107 provides as follows:

(a) ... Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—[certain enumerated persons] ...

(4) ... shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; ....

42 U.S.C. § 9607(a) (emphasis added).

■ The issue before the court is whether the statute grants standing to sue for cost recovery to culpable PRPs. Plaintiffs argue that the statute does confer such standing as the "any other person" language of the statute means simply that—any person who incurs response costs, regardless of that person's potential or actual liability. Defendants, to the contrary, contend that § 107(a)(4)(B) actions are available only to "innocent" parties; that is, persons who could not be held liable under the CERCLA framework. In support of this position, Defendants argue that a "substantial line of recent case law" is in agreement with their reading of CERCLA.

The court must agree with Plaintiffs, and a growing body of case law, in finding that the "any other person" language of § 107(a)(4)(B) confers standing on persons who incur response costs regardless of their own potential liability. *See Laidlaw Waste Systems, Inc. v. Mallinckrodt, Inc.,* 925 F.Supp. 624 (E.D.Mo.1996); *Pinal Creek Group,* 926 F.Supp. 1400; *Pneumo Abex Corp. v. Bessemer and Lake Erie R. Co., Inc.,* 921 F.Supp. 336 (E.D.Va.1996); *Idylwoods Associates v. Mader Capital,* 915 F.Supp. 1290 (W.D.N.Y.1996); *Barmet Aluminum Corp. v. Doug Brantley & Sons, Inc.,* 914 F.Supp. 159 (W.D.Ky.1995); *Charter Tp. of Oshtemo v. American Cyanamid Co.,* 910 F.Supp. 332 (W.D.Mich.1995); *Bethlehem Iron Works v. Lewis Industries, Inc.,* 891 F.Supp. 221 (E.D.Pa.1995); *Town of Wallkill v. Tesa Tape Co.,* 891 F.Supp. 955 (S.D.N.Y. 1995); *Companies for Fair Allocation v. Axil Corp.,* 853 F.Supp. 575 (D.Conn.1994); *cf. Town of New Windsor v. Tesa Tuck, Inc.,* 919 F.Supp. 662, 679–81 (S.D.N.Y.1996) (ultimately prohibiting § 107 cost recovery action by PRP but noting that support for permitting such actions is "reflected in a long line of cases"); *Sun Co., Inc. v. Browning–Ferris, Inc.,* 919 F.Supp. 1523, 1528 (N.D.Okl.1996) (explaining that court was bound to follow Tenth Circuit precedent and prohibit PRP from bringing cost recovery claim "regardless of [its own] ... views concerning the

advantages of the precedent of our sister circuits"). The court finds no reason to give the phrase "any other person" other than its plain meaning. While the phrase may be expansive, its meaning is not unclear. *See Alcan Aluminum Corp.*, 964 F.2d at 261 (noting that "we should not rewrite the [CERCLA] statute simply because the definition of one of its terms is broad in scope"). Defendants urge the court to adopt the position of a number of courts, including some within this circuit, who have read the "any other person" language to mean "any other **innocent** person." For reasons discussed at greater length below, the court "refuses to engraft the word 'innocent' onto the phrase 'any [other] person' set forth in Section 107(a)(4)(B)." *Pinal Creek Group*, 926 F.Supp. at 1407.

**B.** *Judicial Interpretation of Section 107(a)(4)(B)*

As the court noted above, the issue of whether a PRP has standing to bring a cost recovery action is hotly-debated, and neither the Third Circuit nor the Supreme Court has directly confronted the issue. Based upon a thorough review of the existing case law, the statute, and the legislative history and policy goals of CERCLA, the court must side with those courts that have found that any person who incurs response costs, regardless of their own potential or actual liability, has standing to bring a cost recovery action. *See Laidlaw Waste Systems*, 925 F.Supp. at 631 (noting that after careful consideration of all decisions on the issue, the court found the majority decisions less persuasive); *see also Charter Tp. of Oshtemo*, 910 F.Supp. at 337 (finding that interpreting CERCLA such as to bar § 107 cost recovery actions by PRPs "ignores the plain language of section 107, serves some of the purposes of CERCLA less well, and appears to conflict with the Supreme Court's language in *Key Tronic* ").

Courts have interpreted § 107(a)(4)(B) of CERCLA to imply a right of action for both the government and private parties to recover CERCLA response costs. *Key Tronic Corp. v. U.S.*, 511 U.S. 809, ——— ———, 114 S.Ct. 1960, 1965–66, 128 L.Ed.2d 797 (noting that CERCLA "expressly authorizes a cause

of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107"); *Bethlehem Iron Works*, 891 F.Supp. at 223 ("Section 107(a) provides an implied cause of action for private parties to seek recovery of response costs."); *accord Tesa Tape*, 891 F.Supp. at 960 (finding that a city government that had entered into a consent decree without admitting liability could proceed with a cost recovery action and noting in dicta that "even if the Town were not a governmental plaintiff, it would be entitled to maintain both § 107 and § 113 claims"). Some courts, however, have held that a claim by a PRP, even if brought pursuant to § 107, is necessarily a § 113 contribution claim rather than cost recovery claim because the PRP is a liable party. *See, e.g., Colorado & Eastern R. Co.*, 50 F.3d at 1536 (finding that regardless of how plaintiffs pleaded the claim, a claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make[ ]" is necessarily a § 113 contribution claim); *Browning–Ferris*, 33 F.3d at 101–03 (finding PRPs claim for cost recovery under § 107 to actually be a § 113 contribution claim and dismissing said claim as time-barred); *Akzo Coatings, Inc. v. Aigner Corp.*, 30 F.3d 761, 764 (7th Cir.1994) ("[t]hat Akzo's claim is one for contribution we have no doubt", despite the fact that plaintiffs argued that the claim was brought pursuant to § 107); *Amoco Oil Co.*, 889 F.2d at 672 ("When one liable party sues another to recover its equitable share of the response costs, the action is one for contribution, which is specifically recognized under CERCLA [§ 113]."). Generally, these cases reason that since the actions are for allocation of costs among responsible parties, and not for cost recovery by an innocent party, they are necessarily § 113 contribution claims. Three of the four district courts in this circuit to consider the issue have followed this reasoning. *See Borough of Sayreville v. Union Carbide Corp.*, 923 F.Supp. 671 (D.N.J.1996) (finding that no § 107 cost recovery action can exist as between PRPs); *Gould v. A & M Battery & Tire Serv.*, 901 F.Supp. 906 (M.D.Pa.1995) (Conaboy, J.) (same); *Transtech Indus. v. A & Z Septic*

*Clean,* 798 F.Supp. 1079 (D.N.J.1992) (same), *appeal dismissed,* 5 F.3d 51 (3d Cir.1993) (dismissal based upon lack of jurisdiction, not merits of the case). *Contra Bethlehem Iron Works,* 891 F.Supp. 221 (allowing § 107 cause of action by PRP).

### 1. *Transtech* and its Progeny

In *Transtech Industries v. A & Z Septic Clean,* the New Jersey District Court became one of the first courts to find that PRPs lacked standing to bring a § 107 cost recovery action. The *Transtech* plaintiffs initially took action to remediate a Superfund site pursuant to an EPA Rule 106 order. The plaintiffs then filed suit against other users and operators of the site to "recoup their share of the expenses." *Id.* at 1084. According to the court:

> [the] plaintiffs argue that the statutory scheme divides causes of action between privately initiated cleanups and cleanups initiated under threat by the EPA. Under plaintiffs' theory, claims of the former type constitute claims for response costs under § 107, while claims of the latter type are contribution claims under § 113(f)(1).... Plaintiffs then contend that since they voluntarily began their clean-up [sic] operation, theirs is a cost recovery action under Section 107.

*Id.* at 1085. In rejecting the plaintiffs arguments, the *Transtech* court construed CERCLA's contribution provision broadly, in a manner it found to be consistent with traditional common law contribution actions. Specifically, the court held:

> Under general legal principles, a claim for contribution is one in which one liable party attempts to recover from another potentially liable party for its share of the cost. Absent a statutory provision to the contrary, a claim against one liable party by a

party who voluntary [sic] agreed to perform certain actions pursuant to a settlement agreement is still a claim for contribution. Plaintiffs present no reason why this flexible understanding of contribution should be any different under CERCLA.... [W]hen properly construed, the two sections [ [ (107 and 113) ] work together, one governing liability and the other governing contribution from those found liable.

*Id.* at 1086. Finding that actions taken in reaction to an EPA Rule 106 letter were not "voluntary" within the meaning of § 107, the court held that the plaintiffs were not "innocent" parties, and thus, were not capable of maintaining a § 107 cost recovery action. Instead, the court found that the plaintiffs' claims were more properly characterized as § 113(f) contribution claims. *Id.* at 1086–87.

In *Gould,* Judge Conaboy, relying heavily on the *Transtech* ruling and several circuit court opinions, found that a PRP did not have standing to bring a cost recovery action. The plaintiff in *Gould* initiated the cost recovery action after entering into COAs with both the EPA and the Pennsylvania Department of Environmental Resources [5] wherein the plaintiff agreed to perform certain investigations and select appropriate remedial action. In addition to pleading the § 107 action, the plaintiff pleaded a § 113 contribution action in the alternative. Finding that the Third Circuit has "implicitly found that a cost recovery claim by a private party is a § 113 contribution action[,]" [6] *Gould,* 901 F.Supp. at 912, the court ultimately held that "when a private responsible party sues another responsible party to reapportion costs, that action will be a 'contribution' action pursuant to § 113." *Id.* at 913.

---

5. The Pennsylvania Department of Environmental Resources was the predecessor agency to the Pennsylvania Department of Environmental Protection.

6. This court cannot agree that the Third Circuit has implicitly endorsed the concept that a PRP cannot bring a § 107 cost recovery action. While the court agrees that in *Smith Land & Imp. Corp. v. Celotex Corp.,* 851 F.2d 86, 90 (3d Cir.1988), the Third Circuit found that "CERCLA

expressly conditions the amount of contribution on the application of equitable considerations", the court does not agree that the ruling expresses any opinion about PRP cost recovery actions. The Third Circuit's discussion of § 107 in *Smith Land* is limited to a statement of the language of that section, and an explanation of the defenses permitted under § 107. *Id.* at 88. Moreover, the court finds nothing in the *Smith Land* opinion that is inconsistent with the type of PRP cost recovery action discussed *infra* at 1244–46.

Most recently, the New Jersey District Court reaffirmed its ruling in *Transtech* in *Sayreville v. Union Carbide Corp.* The plaintiffs in *Sayreville* were a group of PRPs who entered into several COAs with the New Jersey Department of Environmental Protection ("NJDEP") to remediate and initiate cleanup of a Superfund site. *Id.* at 674–75. The plaintiffs filed the lawsuit against other PRPs who had neither voluntarily participated in the cleanup nor entered into the COAs with the NJDEP. The *Sayreville* plaintiffs filed claims for both cost recovery and contribution, and the defendants[7] moved for a judgment on the pleadings as to the cost recovery claims. The defendants argued that "the Plaintiffs, as PRPs, [cannot] … maintain a cost recovery action under section 107(a) of CERCLA." *Id.* at 675. To the contrary, the plaintiffs argued that "a private PRP may bring a cost recovery action as long as it has initiated a cleanup voluntarily and not as a result of civil actions brought by the United States or the [state]. …" *Id.* The *Sayreville* plaintiffs contended that they were not liable parties because neither the COAs nor the PRP agreements contained admissions of liability.

Following the lead of the majority of courts that have confronted the issue, *see id.* at 677–78 (citing cases), the *Sayreville* court found the plaintiffs' action to be one for contribution rather than cost recovery. The court noted that "[a] response cost recovery action under section 107(a) is available only to an innocent party, a plaintiff who does not bear CERCLA liability, for recovery from liable or potentially liable parties of all of the cleanup costs the innocent plaintiff has incurred." *Id.* at 679. Ultimately the court held as follows: "While a PRP qualifies as 'any other person' under section 107(a)(4)(B), when a private PRP sues another PRP it is still looking to apportion liability between culpable parties. The suit is therefore an action for contribution governed by section 113(f)." *Id.* at 680 (citation omitted).

The *Transtech, Gould* and *Sayreville* decisions are in accord with decisions from other circuits that have found PRPs to lack standing to bring cost recovery actions. *See, e.g., Colorado & Eastern R. Co.,* 50 F.3d at 1536; *Browning–Ferris,* 33 F.3d at 103; *Akzo,* 30 F.3d at 764–65; *Amoco Oil Co.,* 889 F.2d at 672. Culled to their essence, each of these rulings rest upon an interpretation of CERCLA, as amended by SARA, which finds § 107 to govern liability and § 113 to govern the apportionment of damages. *See, e.g., Sayreville,* 923 F.Supp. at 677 n. 11 ("Sections 107 and 113 of CERCLA work together, one governing liability and the other governing apportionment of shared liability."). According to this line of cases, when one PRP seeks reimbursement from another PRP, the situation is necessarily one of apportioning costs among liable parties, and as such, is necessarily an § 113 contribution action. The courts following this trend have found "that to allow one PRP to recover costs from another PRP under section 107 would eviscerate section 113." *Id.* at 678 (citing *Colorado & Eastern R. Co.,* 50 F.3d at 1536).

The facts of the aforementioned cases are not significantly different from those of cases where a minority of courts have reached opposite results. The contradictory outcomes appear to derive more from two differing interpretations of CERCLA, its policy goals, and the proper means of effectuating those goals, than from factual distinctions in the cases. As the discussion below will illustrate, the court finds the position taken by the minority of courts to address the issue to comport with the plain language of CERCLA, and to best serve the policy goals of the statute. *See Charter Tp. of Oshtemo,* 910 F.Supp. at 338 (finding that "the purpose of CERCLA in having potentially liable parties promptly undertake cleanup activities, rather than having governmental agencies performing the cleanup activities and later seeking reimbursement from potentially liable parties for costs incurred, is better served by permitting private parties that perform cleanup activities to seek joint and several liability of other liable parties under section 107").

---

7. Among the defendants in *Sayreville* was the United States Department of Defense. It was the government who filed the motion to dismiss on the pleadings. The court, however, granted the judgment on the pleadings as to all defendants, dismissing in its entirety the plaintiffs' cost recovery claim. *Sayreville,* 923 F.Supp. at 681.

### 2. *Companies for Fair Allocation* and its Progeny

While the majority of courts to consider the issue have permitted PRPs only to bring § 113 contribution actions, a substantial number of courts have also permitted § 107 cost recovery actions by PRPs to proceed. In *Companies for Fair Allocation v. Axil Corp.*, 853 F.Supp. 575 (D.Conn.1994), the Connecticut District Court provided a cogent discussion of its decision to allow a PRP to maintain a § 107 cost recovery action. The court began by noting that Congress's "use of the term 'any other person' and its limited defenses to liability [under § 107], implie[d] that Congress intended the liability provision to sweep broadly." *Id.* at 579. Additionally, the court mentioned the following policy implications of disallowing the § 107 action:

> if PRPs were precluded from pursuing claims for joint and several liability under § 107, and limited to contribution claims and several liability, "a PRP who is otherwise amenable to cleanup may be discouraged from doing so if it knows that, where the harm is indivisible, its only recourse for reimbursement is contribution from the solvent PRPs."

*Id.* (quoting *Allied Corp. v. Acme Solvents Reclaiming*, 691 F.Supp. 1100, 1118 (N.D.Ill. 1988)). The court also distinguished the situation where a nonsettling party sought cost recovery from the settlor party from the situation where a settling party sought recovery from a nonsettlor. *Companies for Fair Allocation*, 853 F.Supp. at 579–80. Section 113, among other things, provides a settling party with contribution protection for matters addressed in the settlement. 42 U.S.C. § 9613(f)(2). Thus, while permitting cost recovery in the former situation might jeopardize the efficacy of § 113, no such concerns exist in the latter situation, a category into which the instant case falls.[8] As the party suing for cost recovery has settled, that party maintains its contribution protection for matters addressed in the settlement, while the nonsettling party rightfully incurs liability due to its failure to participate in the settlement or cleanup. Such a construction is compatible with, and in fact promotes, CERCLA's goal of encouraging prompt cleanup of Superfund sites.

In *Bethlehem Iron Works v. Lewis Industries, Inc.*, the Eastern District of Pennsylvania followed the reasoning of the *Companies for Fair Allocation* court. The plaintiff in *Bethlehem Iron Works* was a corporate owner of property that was both subsequently purchased by one Defendant and previously owned by a second defendant. Alleging that it had incurred in excess of three million dollars in response costs, the plaintiff sought to recover those costs from the defendants. The record before the court included no evidence that any party had been subject to any administrative order, consent decree, or judgment with the state or federal government regarding contamination of the site.[9] Finding the plain meaning of § 107 to be clear, the court made the following observations before concluding that a PRP can proceed with a cost recovery action:

> An examination of the text of sections 107 and 113 gives no indication that PRPs are prohibited from bringing claims pursuant to section 107. First, section 107 imposes liability on PRPs for necessary response costs incurred by any other person.... [T]he text provides no indication that this implied right is limited to "innocent" private parties. This broadly word-

---

**8.** If a nonsettlor were permitted to pursue a cost recovery claim against a settlor, the contribution protection provided by § 113 would effectively be nullified. In such a case, the nonsettlor would theoretically be permitted to recover *all* response costs (not just the amount expended beyond its equitable share). Such an outcome would abrogate the protections afforded to parties who promptly settle their liability. *See infra* note 13 (noting distinction between the position of instant Defendants who have settled with PADEP and the position of those who have not).

**9.** This fact makes the *Bethlehem Iron Works* case unique insofar as it appears to be the only decision on this issue where the EPA and equivalent state agency (here PADEP) were uninvolved in the decision to initiate cleanup. Nevertheless, the court classified the plaintiff as a PRP based upon its reading of CERCLA. Finally, the court noted that neither of the factors that might militate in favor of barring the cost recovery action (protecting settling parties from contribution claims and avoidance of the shorter statute of limitations for contribution claims) were present. *Id.* at 225.

ed provision in conjunction with the absence of the plaintiff's PRP status as a defense provided in section 107(b) suggests that Congress intended section 107(a) liability to sweep broadly. *Id.* at 225. The court ultimately concluded that permitting the cost recovery action to proceed would encourage parties to initiate cleanup activities promptly and voluntarily, and that any unfairness to a PRP found liable for response costs would be resolved based upon that party's counterclaim for contribution. *Id.*

Finally, in what this court has found to be a more recent published decision on the issue,[10] the Arizona District Court held that a PRP can maintain a § 107 cost recovery action. *Pinal Creek Group v. Newmont Mining Corp.*, 926 F.Supp. 1400 (D.Ariz. 1996). At the outset the court must note that it finds the *Pinal Creek Group* decision to be particularly well reasoned, and will adopt the Arizona court's reasoning as set forth more fully below. As with many of the other cases that have raised this issue, the facts of *Pinal Creek Group* are similar to those of the matter presently before the court. The plaintiffs in *Pinal Creek Group,* with the approval and oversight of the Arizona Department of Environmental Quality ("ADEQ"), entered into an agreement to begin to implement a Remedial Action Plan ("RAP") to clean the Pinal Creek site.[11] The defendant owners and operators of mining facilities in the site area were asked by the ADEQ to assist in the cleanup of the site and reimburse the state for its response costs. The defendants refused to either participate in the cleanup or reimburse the state. *Id.* at

1403. The plaintiffs filed a cost recovery action against the defendants; and, the defendants counterclaimed for contribution and moved for dismissal of the plaintiffs' cost recovery claim on the ground that it failed to state a claim upon which relief could be granted. *Id.*

In analyzing § 107, the court found that "[t]he plain language of CERCLA's private party standing provision clearly and unequivocally grants standing to 'any ... person' who has incurred necessary response costs consistent with the National Contingency Plan. *The text does not read 'any innocent person.'* " *Id.* at 1405 (citation omitted) (emphasis added). In support of its reading of the statute, the court noted that § 107(b) enumerates the limited and specific defenses to § 107(a) liability, and that these defenses do not draw a distinction between innocent and culpable plaintiffs. *Id.* In a similar vein, the court highlighted the fact that although § 113 provides an explicit right of contribution for private parties, § 113 does not anywhere indicate that contribution is the exclusive remedy of PRPs. *Id.* at 1406. Finally, the court noted that Congress expressly created § 113 to confirm the existing case law which had found an implied right of action for contribution. "That case law generally interpreted Section 107 broadly to afford a cause of action to liable and non-liable parties alike." *Id.* at 1406 & n. 7 (citing cases).[12]

Next, the *Pinal Creek Group* court explored the policy goals of CERCLA, and commented upon the manner in which those

**10.** The court notes that a decision issued one day prior to the *Pinal Creek Group* decision reached a contrary result. *See Reynolds Metals Co. v. Arkansas Power & Light Co.,* 920 F.Supp. 991 (E.D.Arkansas 1996).

**11.** It is unclear from the opinion whether plaintiffs were compelled to submit the interim RAP to the ADEQ. The opinion merely indicates that the ADEQ "executed a Decision Record authorizing the use of monies from the Arizona Water Quality Assurance Revolving Fund 'for purposes related to the investigation and remediation of the Pinal Creek site.' " *Id.* at 1402. Subsequent to the ADEQ's decision, the plaintiffs submitted the interim RAP. *Id.*

**12.** The court quickly disposed of the defendants' argument that allowing PRPs to proceed with cost recovery actions would eviscerate section 113 and lead to abuse through parties settling with the government for the entire cost of the cleanup, thereby insulating themselves entirely from a subsequent contribution action. First, the court explained that early and complete settlement does not abuse the statute as "prompt settlement is purposefully encouraged by CERCLA's regulatory scheme, which subjects non-settling parties to the risk of disproportionate liability." *Id.* at 1407. Second, the court noted that potential abuse would necessarily be mitigated by the fact that all CERCLA settlements must be approved by the court. *Id.*

goals could best be accomplished. *Id.* at 1407–09. This court adopts the Arizona court's discussion in its entirety, and finds that it would be superfluous to repeat all of the points touched upon therein. Nevertheless, restatement of certain portions of the court's discussion is illuminating. The court concisely described the interplay between CERCLA §§ 107 and 113 as follows: under § 107 "potentially responsible plaintiffs who initiate an environmental cleanup may sue for cost recovery and initially shift the cost of cleanup to other PRPs. Where plaintiffs are also liable parties, however, defendants may assert counterclaims pursuant to Section 113(f), ensuring that plaintiffs do not escape from paying an equitable share of the cleanup costs." *Id.* at 1407. The court noted that this "two-step framework" effectuates CERCLA's goals by providing incentives for private parties to promptly initiate cleanup, while simultaneously ensuring that costs will eventually be allocated in an equitable manner. *Id.*[13]; *see Pneumo Abex,* 921 F.Supp. at 347–48 (discussing how permitting a PRP to proceed with a § 107 cost recovery action enables "the court to accomplish several of the statute's goals at once").

To the contrary, the court observed that prohibiting PRPs to proceed with § 107 actions would turn the CERCLA incentive scheme on its head. *Id.* at 1408. A party who took steps to settle with the EPA or a state agency and undertake cleanup efforts, or a party who promptly initiated cleanup on its own, would bear a number of additional burdens. Those plaintiffs who made an affirmative effort to clean the environment would be "rewarded" by being forced to carry the burden of proof in a contribution action to show that they incurred more than their fair share of the cleanup costs. To successfully

prosecute such a contribution action, the plaintiff would necessarily incur large transaction costs in locating all other PRPs and proving that harm to the site was divisible. Moreover, the plaintiff would risk being unable to recover cleanup costs expended beyond its equitable share and attributable to absent or insolvent PRPs ("orphan shares"). *See generally id.* at 1408. With "incentives" like these, no prudent party would leap into a voluntary cleanup effort.

Finally, concluding its policy discussion, the Arizona court explained that:

> [T]he absence of countervailing policy concerns supports Plaintiffs' in this case. Where a plaintiff brings a Section 107 claim merely to circumvent contribution protection granted by the government to another party pursuant to Section 113(f)(2), or to avoid the shorter statute of limitations for contribution actions, CERCLA policy militates against allowing Section 107 standing. *See Bethlehem Iron Works,* 891 F.Supp. at 225. However, Plaintiffs are not seeking to circumvent contribution protection or to avoid the shorter limitations period. *Instead, they are attempting to shift many of the legal and financial risks associated with their cleanup to Defendants, who have so far refused to assist in the cleanup.* These circumstances support allowing Plaintiffs to utilize Section 107 here.

*Pinal Creek Group,* 926 F.Supp. at 1409 (emphasis added).

### 3. The Instant Case

Plaintiffs in the instant action have filed § 107 claims virtually identical to those of the plaintiffs in the cases discussed by the court above.[14] Plaintiffs are CERCLA PRPs

---

**13.** The court specifically identified the following incentives for early cleanup and settlement created by allowing the PRP cost recovery action:

> (1) shifting the difficult burden of proof concerning the allocation of cleanup costs from plaintiffs to defendants; (2) relieving plaintiffs of the risk of being held liable for "orphan shares"—cleanup costs that would otherwise be charged to insolvent or absent parties; (3) minimizing plaintiffs' transaction costs involved in tracking down and suing every PRP; (4) limiting the range of available defenses to

those enumerated in Section 107(b); and (5) giving parties who initiate cleanups the benefit of a longer statute of limitations.

*Id.* at 1407–08.

**14.** Both parties have raised an issue as to whether Plaintiffs have admitted liability or been adjudged liable. The issue of whether Plaintiffs have admitted liability is intimately connected to the issue of whether a liable party can bring a § 107 cost recovery action. That is, were the court to follow the line of cases which hold that liable parties cannot pursue cost recovery ac-

who have settled with the PADEP and incurred response costs in the remediation and cleanup of the ISCC site.[15] They vigorously urge the court to disregard the majority position of several appellate courts which denies PRPs standing to bring § 107 cost recovery actions against other PRPs, and encourage the court to embrace the minority view which permits such actions. Plaintiffs contend that court opinions which deny PRPs standing have "ignored the statutory language of CERCLA and its broad remedial policy encouraging settlement, misinterpreted the legislative history, and, respectfully, were decided incorrectly." Defendants, of course, opine that the court should follow the majority position.

As a preliminary matter, the court notes that the appellate precedent on this issue is not accurately characterized as unanimous. *See Pneumo Abex*, 921 F.Supp. at 347 (observing that the weight of authority in favor of denying PRPs standing to bring § 107 cost recovery actions is not as great as the defendants had characterized it to be). The First, Seventh and Tenth Circuit Courts of Appeal have issued rulings denying all PRPs (innocent or culpable) standing to sue for cost recovery pursuant to § 107. *See Colo-*

*rado & Eastern R. Co.*, 50 F.3d at 1535–36; *Browning–Ferris*, 33 F.3d at 98–103; *Akzo*, 30 F.3d at 764–65. In *Akzo*, however, the Seventh Circuit does not mention its prior ruling in *Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 748 (7th Cir.1993), *cert. denied*, 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994), where "Judge Posner recognized that CERCLA Section 107(a)(4)(B) 'permits one responsible person to recover all or part of its response costs from another.'" *Pinal Creek Group*, 926 F.Supp. at 1411. The Sixth Circuit has permitted PRPs to maintain cost recovery actions, *see Velsicol Chem. Corp. v. Enenco, Inc.*, 9 F.3d 524 (6th Cir.1993), while the Eighth Circuit initially permitted, then recently denied, PRPs standing to sue under § 107(a)(4)(B). *Compare General Electric Co. v. Litton Industrial Automation Sys., Inc.*, 920 F.2d 1415 (8th Cir.1990), *cert. denied*, 499 U.S. 937, 111 S.Ct. 1390, 113 L.Ed.2d 446 (1991) (permitting PRP to maintain cost recovery action), *with Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 934 n. 4 (8th Cir.1995) (finding that PRP did not have standing to sue for cost recovery). The Second, Third, Fourth, Ninth[16] and Eleventh

---

tions, it would be material whether or not Plaintiffs have admitted liability either expressly or impliedly. As the court will not follow the *Akzo* line of cases, the court finds this issue to be of diminished importance. More relevant to the court's determination is the issue of whether Plaintiffs promptly or voluntarily initiated settlement and cleanup. In their brief Plaintiffs indicate that they entered into the COAs after receiving a letter from the PADEP notifying them that they were PRPs for the ISCC site. Insofar as it appears that no pressure beyond the letter was exerted upon Plaintiffs, the court, in keeping with its obligation to view the facts and draw all inferences at this stage of the litigation in a manner most favorable to the non-moving party, finds that Plaintiffs voluntarily undertook settlement and cleanup. *See United States v. SCA Services of Indiana, Inc.*, 865 F.Supp. 533, 543 (N.D.Ind.1994).

**15.** Plaintiffs, in their opposing brief, indicate that three of the moving Defendants have in fact settled with the PADEP. (*See* Pls.' Brief in Op. at 23.) Further, Plaintiffs imply that this fact is of little consequence as none of the settling Defendants settled with the Commonwealth for the costs which Plaintiffs seek to recover. (*Id.*) The court is less inclined than Plaintiffs to downplay the significance of the three Defendants having settled. Insofar as these Defendants settled in a

timely manner with the PADEP, the policy goals of CERCLA are met, and permitting a complete cost recovery action against them might frustrate the contribution protection afforded by § 113. The court, however, is not prepared to decide this issue as little briefing was devoted to these Defendants and as to how their situation might be distinguished from that of other non-settling Defendants. Accordingly, the court will direct Defendants to submit further briefing on this issue if they so desire; and, the court will provide Plaintiffs with the opportunity to respond.

**16.** There is a split of opinion as to whether the Ninth Circuit has ruled on this issue. The only Ninth Circuit case to address the relationship between § 107 and § 113 is *In re Dant & Russell, Inc.*, 951 F.2d 246 (9th Cir.1991). The relevant issue before the court dealt with whether the Bankruptcy Code barred a PRP's cost recovery action against a bankruptcy estate. Courts have read this opinion as both endorsing and prohibiting a PRP cost recovery action. *Compare Pinal Creek Group*, 926 F.Supp. at 1412–13 (finding that *Dant & Russell* "appears to support Plaintiffs' argument that PRPs have standing to assert Section 107 cost recovery claims"), *with Akzo*, 30 F.3d at 761 (citing *Dant & Russell* for the proposition that CERCLA claims brought by liable parties are "quintessential" contribution claims).

Circuits have not directly ruled on the issue. Accordingly, while a majority of Circuit Courts of Appeal to confront the issue have denied PRPs standing, a greater number of appellate courts have yet to squarely rule on the issue.

Finally, the Supreme Court's decision in *Key Tronic Corp. v. United States,* 511 U.S. 809, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994), seems to implicitly endorse the validity of a PRP cost recovery action. The issue before the Court in *Key Tronic* was whether attorneys' fees could be considered necessary costs of response under CERCLA. The court ultimately found that attorneys' fees were not recoverable under § 107, but noted that the ruling "does not signify that all payments that happen to be made to a lawyer are unrecoverable expenses under CERCLA.... [S]ome lawyers' work that is closely tied to the actual cleanup may constitute a necessary cost of response in and of itself under the terms of § 107(a)(4)(B)." *Id.* at ——, 114 S.Ct. at 1967. After briefly analyzing the statutory framework of CERCLA and SARA, and the case law that has developed around them, the Court noted in dicta that CERCLA "now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107." *Id.* at ——, 114 S.Ct. at 1966. More importantly, the court expressly stated § 107 authorizes private parties to "recover cleanup costs from *other* PRP's." *Id.* at ——, 114 S.Ct. at 1967 (emphasis added). The court finds some support for its ruling in the *Key Tronic* decision. Insofar as the decision implicitly acknowledged that a PRP can recover costs from another PRP, it lends support to Plaintiffs' position and this court's ruling. *See Charter Tp. of Oshtemo,* 910 F.Supp. at 337 (noting that interpreting CERCLA as prohibiting a PRP cost recovery action would "render[] the Supreme Court's reasoning and legal conclusions [in *Key Tronic*] concerning section 107 meaningless"). That being said, the court notes that the support it draws from this case is limited as the § 107

standing issue was not directly before the Court in *Key Tronic.*

The court finds that the "any other person" language in § 107 means "any other person" regardless of that person's CERCLA culpability. According the language of the statute its plain meaning is consistent with effectuating the broad remedial goals of CERCLA by encouraging parties to promptly and voluntarily initiate cleanup or settlement, and discouraging parties from refusing to participate in voluntary cleanup efforts or avoiding settlement. In permitting PRPs to pursue cost recovery actions, the court provides PRPs who initiate cleanup or settlement with two valuable procedural tools—the longer six-year statute of limitations, and the shifting of the burden of proof as to divisibility of harm to the defendant PRPs. Contrary to what some would argue, the court does not thereby provide plaintiff PRPs with a windfall. Defendant PRPs may crossclaim for contribution pursuant to § 113, thereby permitting the court to ultimately apportion liability equitably between the parties.[17] Such an interpretation and application of CERCLA merely assists in accomplishing CERCLA's goals by providing *all* parties with a strong incentive to put the environment first.

Based upon the foregoing discussion, the court will deny Defendants' motion to dismiss Plaintiffs' cost recovery claims. An appropriate order will issue.

---

This court declines to speculate as to the Ninth Circuit's opinions regarding this issue, instead preferring to wait until the Ninth Circuit speaks directly to the issue.

17. Under this scenario, it is the defendant PRPs who failed to settle or initiate cleanup promptly or voluntarily, who will bear the cost of orphan shares.